**Raymond W. SNIDER, Plaintiff–Appellant,**

v.

**Dr. MELINDEZ, Defendant–Appellee.**

**Docket No. 97–2803.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 25, 1999.

Decided: Dec. 8, 1999.

Michael G. Radigan, New York, NY, for Plaintiff–Appellant.

Mark W. Pennak (Staff Attorney, Civil Division, United States Department of Justice, Washington, D.C.), for Intervenor United States of America.

Martin Hotvet (Assistant Attorney General, State of New York, Albany, NY), for Amicus Curiae State of New York.

Before: LEVAL, POOLER and HEANEY,* Circuit Judges.

LEVAL, Circuit Judge:

Plaintiff Raymond W. Snider, a prisoner at Attica Correctional Facility, appeals from the judgment of the United States District Court for the Western District of New York (Arcara, *J.*) dismissing his Section 1983 complaint without prejudice for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). The district court dismissed Snider's pro se, in forma pauperis complaint on its own motion without affording him notice or an opportunity to be heard. It also directed that the dismissal be docketed as a "strike" for purposes of 28 U.S.C. § 1915(g). We hold that while a court possesses inherent authority to dismiss such a complaint on its own motion based on failure to comply with the statutory exhaustion requirement, the court was first obligated to provide the plaintiff notice and an opportunity to be heard. We therefore vacate the judgment and remand the case so that Snider may receive the benefit of the procedural safeguards to which he was entitled. We further hold that the district court erred in designating the dismissal a "strike" under 28 U.S.C. § 1915(g).

*Background*

A. *Relevant statutory law.*

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (the "Act") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Section 1997e(c) of the Act provides in relevant part:

> (1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title ... by a prisoner ... if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted....

> (2) In the event that a claim is, on its face, frivolous, malicious, [or] fails to state a claim upon which relief can be granted, ... the court may dismiss the underlying claim without first requiring

---

* The Honorable Gerald W. Heaney, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c).

The Act also includes a provision, Section 1915(g) (the "three strikes provision"), that narrows the circumstances under which prisoners may file in forma pauperis ("IFP") in the federal courts. Prior to the passage of the Act, federal law permitted "any court of the United States [to] authorize the commencement ... of any suit ... or proceeding ... without prepayment of fees ... by a person who ... is unable to pay such fees." 28 U.S.C. § 1915(a). Section 1915(g) modifies the effect of Section 1915(a) by providing:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [Section 1915] if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it [was] frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

B. *Events giving rise to this lawsuit and proceedings in the district court.*

In September 1997, Snider filed this lawsuit under 42 U.S.C. § 1983 against Defendant "Dr. Melindez," a psychiatrist at Attica Correctional Facility ("Attica"). The complaint alleged that Melindez told Snider he was "being punished for feeling suicidal," then repeatedly drugged him with Haldol, an antipsychotic medication, despite Snider's protestations that he was allergic to it. Snider also alleged that Melindez caused him to be placed in an uninhabitable cell while he was drugged. This cumulative mistreatment, Snider asserted, led him to experience "trouble breathing" and a "racing ... mind." Snider's lawsuit sought a transfer to another prison and damages for pain and suffering.

Snider wrote his complaint on a form apparently provided for pro se prisoner plaintiffs by the district court. The form asks plaintiffs, "Is there a prisoner grievance procedure in this institution?" and, "Did you present the facts relating to your complaint under the prisoner grievance procedure?" Snider checked the box for "yes" in answer to the first question and the box for "no" in answer to the second.

The district court granted Snider leave to proceed in forma pauperis under 28 U.S.C. § 1915(a). It then ruled, however, that "[p]laintiff's claims in this matter, while clearly raising serious issues which may otherwise state a claim under 42 U.S.C. § 1983, must be dismissed for failure to comply with the [administrative exhaustion] requirements of 42 U.S.C. § 1997e(a)." The court ordered that the complaint be dismissed without prejudice, and directed the Clerk of the United States District Court for the Western District of New York to "docket [the] dismissal as a strike for purposes of 28 U.S.C. § 1915(g)." The court's dismissal of the complaint and its entry of the strike were on its own motion, and were not preceded by notice or an opportunity for Snider to be heard in opposition. On the basis of the order, the Clerk of the Court entered judgment stating, "[T]he complaint is dismissed without prejudice ... [and] this dismissal is counted as a strike for the purposes of 28 U.S.C. Section 1915(g)." Snider appealed.

*Discussion*

Snider, who is now represented by counsel, advances four main arguments on appeal: (1) The district court abused its discretion in dismissing his complaint on its own motion because Section 1997e(c) authorizes dismissal in that manner only if the complaint "is frivolous, malicious, [or] fails to state a claim upon which relief can be granted," circumstances that do not encompass failure to exhaust administrative remedies. (2) The court should not have required him to exhaust administra-

tive remedies in the first place because on a proper reading of Section 1997e(a) his action was not one "with respect to prison conditions." (3) Both the administrative exhaustion requirement of Section 1997e(a) and the three strikes provision of Section 1915(g) are unconstitutional as applied by the district court. (4) Finally, even if the court properly dismissed his complaint pursuant to Section 1997e(a) for failure to exhaust administrative remedies, it erred in ordering that the dismissal be docketed as a strike for purposes of Section 1915(g). We rule in Snider's favor on his first contention, although for a different reason, and on his fourth, pertaining to the entry of the strike. Because we vacate the judgment and remand for further proceedings, we need not rule on his second and third arguments, which, in any event, should be presented first to the district court.

A. *Whether the district court erred in dismissing Snider's complaint on its own motion.*

Section 1997e(c)(1) directs that a district court "shall" dismiss actions with respect to prison conditions on its own motion "if the court is satisfied that the action is frivolous, malicious, or fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1). Snider contends that the district court abused its discretion in dismissing his complaint on its own motion because the basis upon which it did so—his failure to exhaust administrative remedies—is not enumerated in Section 1997e(c)(1) as a permissible basis for such dismissal.

We believe Snider is correct that Section 1997e(c)(1) was not intended to apply to dismissals without prejudice for failure to exhaust administrative remedies. First, the interplay between paragraphs (1) and (2) of Section 1997e(c) would make little sense if failure to state a claim included failure to exhaust. Paragraph (2) of Section 1997e(c) states that courts "may" dismiss claims that are facially "frivolous, malicious, [or] fail[ ] to state a claim . . .

without first requiring the exhaustion of administrative remedies." 42 U.S.C. § 1997e(c)(2). If failure to state a claim included failure to exhaust for purposes of Section 1997e(c), then paragraph (2) would carry the highly improbable meaning that courts may dismiss for failure to exhaust administrative remedies without first requiring exhaustion of administrative remedies. Furthermore, paragraph (2) would be telling courts they "may" do what paragraph (1) asserts they "shall" do. This reading would also render Section 1997e(a) redundant: there would be no need to provide that prisoner actions may not be brought until administrative remedies are exhausted, as Section 1997e(a) provides, if Section 1997e(c)(1) mandated dismissal for failure to exhaust administrative remedies.

In addition, the apparent purposes of Section 1997e(c)(2) and of the three strikes provision of Section 1915(g) strongly imply that the dismissal contemplated in these provisions is one that *finally* terminates the action because of a determination that it ultimately cannot succeed. Presumably, the reason Section 1997e(c)(2) authorizes dismissal "without first requiring the exhaustion of administrative remedies" is that such exhaustion would be fruitless in an action that the court has determined to be irremediably defective. That is often not true of an action that is defective because administrative remedies have not yet been exhausted. Similarly, we believe Section 1915(g)'s mandate that prisoners may not qualify for IFP status if their suits have thrice been dismissed on the ground that they were "frivolous, malicious, or fail[ed] to state a claim" was intended to apply to nonmeritorious suits dismissed with prejudice, not suits dismissed without prejudice for failure to comply with a procedural prerequisite.

Failure to exhaust administrative remedies is often a temporary, curable, procedural flaw. If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can

cure the defect simply by exhausting them and then reinistituting his suit (in the event the administrative claim fails to afford him the desired relief). *Cf. Criales v. American Airlines, Inc.,* 105 F.3d 93, 95–98 (2d Cir.1997) (holding that a Title VI plaintiff's failure to exhaust an administrative remedy was a "curable defect" that prevented the court from reaching the merits of his claim, but had no res judicata effect). That is no doubt why the district court dismissed Snider's complaint "without prejudice." **A. 10, 12.** We do not think that Section 1915(g) was meant to impose a strike upon a prisoner who suffers a dismissal because of the prematurity of his suit but then exhausts his administrative remedies and successfully reinstitutes it.

■ For the foregoing reasons, we believe that "fail[ure] to state a claim," as used in Sections 1997e(c) and 1915(g) of the PLRA, does not include failure to exhaust administrative remedies—at least absent a finding that the failure to exhaust permanently bars the suit. However, we need not decide this question. Even if Snider is correct in arguing that, for purposes of Section 1997e(c)(1), "fail[ure] to state a claim" does not include failure to exhaust, he is mistaken in arguing that a court lacks authority to dismiss for failure to exhaust on its own motion. His error lies in assuming that a court requires explicit statutory authorization to dismiss on its own motion.

Both the Supreme Court and the Second Circuit have long held that courts may dismiss actions on their own motion in a broad range of circumstances where they are not explicitly authorized to do so by statute or rule. *See, e.g., Link v. Wabash R.R. Co.,* 370 U.S. 626, 629–32, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (district court has inherent power to dismiss sua sponte for failure to prosecute); *Costello v. Unit-*

*ed States,* 365 U.S. 265, 286–87, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) (district court may dismiss sua sponte for plaintiff's failure to comply with an order of the court); *Leonhard v. United States,* 633 F.2d 599, 609 n. 11 (2d Cir.1980) (district court may dismiss sua sponte on statute of limitations grounds); *see also* Fed.R.Civ.P. 83(b) ("A judge may regulate practice in any manner consistent with federal law . . . .").

In view of Section 1997e(a)'s command that no action with respect to prison conditions "shall be brought . . . until such administrative remedies as are available are exhausted," we can perceive no reason why a court should be prohibited from dismissing actions in violation of this mandate on its own motion. On the contrary, dismissal on the court's own motion serves the beneficial end of avoiding the waste that would result from obliging a lawyer for the state to prepare the motion and appear in the action when the procedural defect is readily apparent to the court.

■ Nonetheless, the district court's judgment dismissing Snider's action must be vacated. The problem with the court's dismissal was not that it was done on the court's own motion, but rather that it was done without affording Snider notice and opportunity to be heard.

A court's dismissal on its own motion is sometimes described as a "sua sponte" dismissal. *See, e.g., Bennett v. Artuz,* 199 F.3d 116 (2d Cir.1999). Perhaps because of the similarity between the words "sua sponte" and "spontaneous,"[1] legal parlance sometimes confuses the court's power to act on its own motion with the power to act immediately without affording an opportunity to be heard in opposition. The difference is significant.

Where a court order is either mandated by law or unquestionably beneficial to the party favored by the ruling, there is little

---

1. "Spontaneous" and "sponte" are in fact etymologically related. The term "spontaneous," which can mean (among other things) "without premeditation," derives in part from

the Latin "sponte," which means "of one's own accord, freely, [or] willingly." II *The Compact Edition of the Oxford English Dictionary* 2977 (1971).

reason to insist on the formality that the order await a motion made by that party. A district court may enter such an order on its own motion. This is all the more appropriate in circumstances where the party favored by the ruling has not yet appeared in the action.

On the other hand, providing the adversely affected party with notice and an opportunity to be heard plays an important role in establishing the fairness and reliability of the order. It avoids the risk that the court may overlook valid answers to its perception of defects in the plaintiff's case. Furthermore, denying a plaintiff an opportunity to be heard "may tend to produce the very effect [the court] seek[s] to avoid—a waste of judicial resources—by leading to appeals and remands." *Perez v. Ortiz,* 849 F.2d 793, 797 (2d Cir.1988). Unless it is unmistakably clear that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise defective, we believe it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition. As we have previously stated, dismissal in such a manner may be, "by itself, grounds for reversal." *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* 760 F.2d 1347, 1365 (2d Cir.1985) (Friendly, *J.*) (internal quotation marks and citations omitted); *Schlesinger Inv. Partnership v. Fluor Corp.,* 671 F.2d 739, 742 (2d Cir. 1982) (same); *see also Perez,* 849 F.2d at

797 (sua sponte dismissal with affording plaintiff notice and opportunity to be heard is "itself grounds for reversal," (quoting *Square D* ), although permitted in some circumstances where a complaint is obviously frivolous); *cf. Eades v. Thompson,* 823 F.2d 1055, 1062 (7th Cir.1987) (observing that "[a]t least four circuits do not permit sua sponte dismissals without notice and an opportunity to be heard"). In this case, we conclude that, while the district court was free to act on its own motion, it erred in dismissing the complaint without giving Snider notice and an opportunity be heard in opposition.

The State contends on behalf of Defendant that this is a useless precaution, as Snider's failure to exhaust available administrative remedies was unambiguously established in the record. We disagree. The district court's sole basis for concluding that administrative remedies were available to Snider was that in his standard-form pro se complaint, he answered "yes" to a question asking him whether "there [is] a prisoner grievance procedure in this institution." That was not an adequate basis.

Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit,[2] are not questions of fact. They either are, or

**2.** We recognize that there is a disagreement among courts over whether the exhaustion requirement of Section 1997e(a) applies where administrative remedies are unable to provide the relief that a prisoner seeks in his federal action. *Compare, e.g., Beeson v. Fishkill Correctional Facility,* 28 F.Supp.2d 884, 896 (S.D.N.Y.1998) (holding that "Congress, in enacting the PLRA, applied the exhaustion requirement to all actions brought by prisoners with respect to prison conditions ... regardless of what relief is sought") *with White v. Fauver,* 19 F.Supp.2d 305, 317 (D.N.J.1998) (holding that "[t]he statute requires exhaustion of 'available administrative remedies,' not 'any institutional grievance procedure,'" and that an " 'available remedy' cannot mean that some procedure is available, the use of which would be but an empty formality" that

could not provide the relief sought) (citation omitted). We need not resolve this disagreement. Regardless whether Section 1997e(a) requires a prisoner to exhaust administrative remedies that are incapable of providing the particular relief sought (e.g., money damages), the provision clearly does not require a prisoner to exhaust administrative remedies that do not address the subject matter of his complaint. If, for example, the inmate's suit complains that he was beaten by prison guards, and the institution provides a grievance proceeding for inmate complaints about food (but none for complaints about beatings), we can be confident that Section 1997e(a) does not require the inmate to pursue a grievance procedure that is available but has no application whatsoever to the subject matter of his complaint.

inevitably contain, questions of law. Where administrative remedies are created by statute or regulation affecting the governance of prisons, the existence of the administrative remedy is purely a question of law. The answer depends on the meaning of the relevant statute or regulation. Even where a grievance procedure is informally established by the warden of a prison and therefore not ascertainable by examination of statutes or regulations, the existence of the procedure may be a matter of fact, but whether it qualifies as an administrative remedy that must be exhausted under Section 1997e(a) is a question of law. The court cannot properly determine a question of law on the basis of a party's concession (much less by the concession of an unrepresented party).[3] The meaning of a statute, for example, cannot vary from case to case depending on concessions a party may have made. *Cf. Swift & Co. v. Hocking Valley Ry. Co.,* 243 U.S. 281, 290, 37 S.Ct. 287, 61 L.Ed. 722 (1917) ("The duty ... of every judicial tribunal[ ] is ... to determin[e] rights of persons or of property, which are ... controverted in the particular case before it. ... No stipulation of parties or counsel ... can ... affect the duty[ ] of the court in this regard.") (internal quotation marks and citation omitted) (Brandeis, *J.*); *Smith Engineering Co. v. Rice,* 102 F.2d 492, 499 (9th Cir.1938) ("We see no reason why we should make what we think would be an erroneous decision, because the applicable law was not insisted upon by one of the parties.").

For the foregoing reasons, we have no difficulty rejecting the State's contention that the record unambiguously establishes the availability of an administrative remedy Snider failed to exhaust, and we therefore reject the State's argument that notice and opportunity to be heard would be a meaningless formality. Indeed, the more serious question is whether, on this record, the defect would be cured merely by giving Snider the opportunity to be heard. A court may not dismiss for failure to exhaust administrative remedies unless the court determines that such remedies are available. Snider's answers cannot establish that. Even after giving Snider notice and opportunity to be heard, the court will be obligated to establish the availability of an administrative remedy from a legally sufficient source before it may dismiss his complaint.

B. *Whether the district court erred in directing the entry of a strike.*

■ (i) For similar reasons, as well as others, we conclude the district court erred in directing the entry of a "strike" in the judgment dismissing Snider's complaint. The entry of a strike was obviously harmful to Snider's interests, yet he was given no notice and opportunity to be heard as to why, even if the dismissal was warranted, a strike might not be. Snider was entitled to such notice and opportunity in relation to the strike determination as well as to the dismissal.

---

**3.** In addition, we note that the form on which Snider submitted his complaint presents numerous possibilities for error. First, it asks simply whether there is a grievance procedure, but not whether the procedure is applicable to the subject matter of the complaint. Second, by asking whether there is a grievance procedure "in this institution," the form invites confusion: A prisoner who has been transferred since the event of which he complains may answer "yes" because there is a grievance procedure in his current prison, although the prison in which he suffered the wrong had none. Finally, the form fails to offer a prisoner the opportunity to answer that he does not know whether a grievance procedure exists, and fails to warn the prisoner that certain answers will lead to the dismissal of his action. While in some instances prisoners may be very keenly aware whether there is an administrative remedy, in others they may have no idea of the answer to this legal question, or may be mistaken in the belief that a grievance procedure is available. (We do not mean to suggest by these observations that such forms and questionnaires have no utility. They may usefully guide the court's inquiry as to whether the prisoner has fulfilled the prerequisites to suit; however, a plaintiff's answers cannot by themselves establish the existence of an administrative remedy.)

The failure to afford Snider these safeguards was not a mere technical error. Even if the record were unmistakably clear that he had failed to exhaust available administrative remedies and that the dismissal was therefore appropriate, it would not necessarily follow that the dismissal warranted the entry of a strike. There are several reasons why the entry of a strike might have been improper. First, a strike is properly counted only if the action was "frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). As discussed above, we do not believe that failure to exhaust qualifies as failure to state a claim in the context of the PLRA. Nor would an action be rendered "frivolous" by a failure to exhaust that was remediable. Accordingly, a dismissal by reason of a remediable failure to exhaust should not count as a strike.

(ii) We also doubt whether the entry of a strike is properly considered at the time an action is dismissed. The designation of strikes has no practical consequences until a defendant in a prisoner's lawsuit raises the contention that the prisoner's suit or appeal may not be maintained in forma pauperis pursuant to 28 U.S.C. § 1915 because the prisoner has accumulated three strikes. At that time, because a practical consequence turns on the answer to the question, a court will need to determine whether the prisoner should be charged with three strikes. Litigation over the issue at an earlier juncture would involve the courts in disputes that might never have any practical consequence. The resolution of such disputes is not a proper part of the judicial function. *Cf. Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) (noting that "[t]he real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff").[4]

Of course, it would be well for a court entering an order of dismissal to see to it that the record and judgment clarify the issue for the future. The judgment should clearly state the reasons for the dismissal, including whether the dismissal is because the claim is "frivolous," "malicious," or "fails to state a claim," whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons. The judgment should also state whether the dismissal is with prejudice or without. Such clarifications will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action in forma pauperis by the three strikes rule of Section 1915(g).[5]

### Conclusion

The judgment of the district court dismissing Snider's complaint is hereby VACATED, and the case is REMANDED for fur-

---

**4.** Contemporaneous classification of dismissals as strikes or non-strikes at a time when the ruling has no immediate consequence may also lead district courts to undertake such classifications carelessly, and with inadequate explanation of why a given dismissal falls into one category and not the other. We think these concerns outweigh any possible benefits that may follow from contemporaneous classification due to the greater familiarity with the factual record that a dismissing court may possess. Although we have found no authority from our sister circuits expressly holding that contemporaneous classification of strikes is barred, several circuits appear to leave the assessment of strikes to the court called upon to enforce Section 1915(g). *See,*

*e.g., Rodriguez v. Cook,* 169 F.3d 1176, 1178 (9th Cir.1999); *Wilson v. Yaklich,* 148 F.3d 596, 602–03 (6th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999); *Patton v. Jefferson Correctional Ctr.,* 136 F.3d 458, 461 (5th Cir.1998); *Lucien v. Jockisch,* 133 F.3d 464, 469 n. 8 (7th Cir. 1998).

**5.** The observations in this subsection (ii) are not holdings of the opinion and do not have the force of law. We offer them because we believe they may be helpful to district courts in developing procedures to deal with the determination of strikes pursuant to Section 1915(g).