Christopher NEAL, Plaintiff–Appellant,

v.

Glenn S. GOORD, Commissioner; Walter Kelly, Attica, Superintendent; Hirsch, Sgt.; John Does, and Jane; Buehler, Sgt.; Storres, C.O.; Barker, C.O.; Hansen, C.O.; Takos, Dr.; Stephen Laskowski, Doctor, Defendants–Appellees.

Docket No. 99–0253.

United States Court of Appeals, Second Circuit.

Argued May 25, 2001.

Decided Oct. 4, 2001.

René Reich–Graefe, New York, NY, (Douglas F. Broder, Coudert Brothers, New York, New York, of counsel), for Plaintiff–Appellant.

Martin A. Hotvet, Albany, NY, (Nancy A. Spiegel, Eliot Spitzer, Attorney General of the State of New York, Albany, NY, of counsel), for Defendants–Appellees.

Before CARDAMONE, PARKER, Circuit Judges, and MURTHA *, District Judge.

CARDAMONE, Circuit Judge:

There are two questions on this appeal where the issue before us is the propriety of the dismissal of plaintiff's amended complaint. The first question asks whether a prisoner's claim of an alleged deprivation of medical services must be administratively exhausted before relief may be sought in federal court. The answer to that question hinges on whether the action of which the inmate complains is properly classified as a single, momentary matter—for example, an individualized retaliatory action against him or a particularized instance of excessive force—in which case no exhaustion is required. Yet, if the circumstances complained of affect everyone in the prison community—for example, food, clothing, housing, recreational facilities, that is, those things inmates of a prison share in common—then there must be administrative exhaustion before bringing suit in federal court.

The second question is one of procedure: whether a district court confronted with a plaintiff's failure fully to exhaust administrative remedies may stay the case until such exhaustion is complete, or whether the court must dismiss the case without prejudice to its later reinstitution. We hold in this case for the first time that where exhaustion is required, failure to do so must result in dismissal, notwithstanding efforts by the inmate-plaintiff to pur-

---

* Hon. J. Garvan Murtha, Chief Judge, United States District Court for the District of Vermont, sitting by designation.

sue administrative remedies while simultaneously seeking relief in federal court.

## BACKGROUND

Plaintiff Christopher Neal commenced this suit on April 7, 1999, pursuant to 42 U.S.C. § 1983 (1994 & Supp. V 1999), in the United States District Court for the Western District of New York (Siragusa, J.) against defendants Glenn S. Goord, Commissioner of the New York State Department of Correctional Services, Walter Kelly, Superintendent of Attica Correctional Facility, and certain Attica personnel including Sergeants Buehler and Hirsch, Officers Storres, Barker and Hansen, and Drs. Takos and Laskowski. Neal filed an amended complaint six weeks later. At the time of his pleadings, Neal was an inmate at New York State's Attica Correctional Facility, having been transferred there from another state prison, Shawangunk Correctional Facility, on March 9, 1999.

The following facts are taken from the amended complaint and its attachments. While at Shawangunk, plaintiff was injured in "an incident" on January 21, 1999. Although he received medication for his injuries upon arriving at Attica, Neal repeatedly requested a stronger prescription because of allegedly severe lower back pain. Those requests were ignored or denied. On April 18 and 19, 1999 he asked for physical therapy, which was not ordered for him until nearly two weeks later on May 1, 1999. Neal also spoke with Dr. Takos and told him that he needed special boots and sneakers. He further complained about his back pain, whereupon Dr. Takos conducted a short examination through the bars of plaintiff's cell. The doctor said he would order an x-ray, but no x-ray was ever taken. Neal further alleged in his amended complaint that defendants failed to protect him from a for-

mer Shawangunk officer, refused his request for a transfer based on his fear of retaliation by that officer, and also failed to assist him in obtaining alternative meals, legal materials, religious items and clean clothing that he had requested.

Attached as exhibits to the amended complaint were numerous documents indicating that Neal had filed grievances with the Inmate Grievance Program. While these grievances touched upon a wide variety of issues, the ones relevant to this appeal addressed Neal's request for a change in prescriptions, his need for special boots, his problems with severe back pain, his request for legal materials, and the institution's failure to provide clean sheets when his one set was in the laundry. Plaintiff also wrote several letters. In particular, he wrote defendant Goord with respect to a physical threat made by the former Shawangunk officer, and he wrote Deputy Commissioner George J. Bartlett, defendant Kelly, and Lucien Leclaire (whose official position is not identified) about his failure to receive alternative meals since arriving at Attica.

The district court, having previously granted plaintiff's request to proceed *in forma pauperis*, conducted a *sua sponte* review of the amended complaint pursuant to 28 U.S.C. §§ 1915 and 1915A (1994 & Supp. V 1999). It determined that because plaintiff failed to exhaust administrative remedies *before* filing his original complaint in April 1999 his claims could not go forward. The amended complaint was thereby dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a) (1994 & Supp. V 1999). Judgment was entered on August 12, 1999, and plaintiff filed an appeal on August 18, 1999.

Plaintiff filed a second amended complaint on August 23, 1999. Attached as exhibits were various decisions from the Central Office Review Committee (Review

Committee), which renders final decisions on inmate grievances. In the only decision pertinent to this appeal, the Review Committee had accepted in part plaintiff's grievance pertaining to his request for physical therapy. The district court treated the second amended complaint as a motion for reconsideration and denied it in a September 27, 1999 order for the same reason as had been given before, that is, because plaintiff had not exhausted his administrative remedies prior to filing the original complaint. We affirm.

## ANALYSIS

### I  Merits of the Dismissal

■ We apply a *de novo* standard of review to *sua sponte* dismissals made pursuant to 28 U.S.C. § 1915(e) or § 1915A, or 42 U.S.C. § 1997e. *Marvin v. Goord*, 255 F.3d 40, 42 (2d Cir.2001) (per curiam); *Giano v. Goord*, 250 F.3d 146, 149–50 (2d Cir.2001).

A. *Whether Plaintiff's Inadequate Medical Treatment Claims Relate to a "Prison Condition" Subject to Exhaustion*

Congress, in enacting the Prison Litigation Reform Act of 1995(Act), Pub.L. No. 104–134, Title VIII, 110 Stat. 1321–66 (1996), carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing suit under 42 U.S.C. § 1983. *See Nussle v. Willette*, 224 F.3d 95, 97–99 (2d Cir.2000), *cert. granted sub nom. Porter v. Nussle*, —— U.S. ——, 121 S.Ct. 2213, 150 L.Ed.2d 207 (June 4, 2001) (No. 00–853). The Act amended 42 U.S.C. § 1997e(a) so that it now provides

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such ad-

ministrative remedies as are available are exhausted.

The Act does not define "prison conditions" as that term is used in this section. We have observed that "[t]he plain language of 'prison conditions' suggests those aspects of prison life affecting the entire prison population, such as the food, *medical care*, recreational facilities and the like." *Lawrence v. Goord*, 238 F.3d 182, 185 (2d Cir.2001) (per curiam) (emphasis added); *accord Nussle*, 224 F.3d at 101 (quoting *Carter v. Kiernan*, No. 98 Civ. 2664, 1999 WL 14014, at *3 (S.D.N.Y. Jan.14, 1999), which stated that "[t]he ordinary, contemporary, common meaning of the phrase 'prison conditions' refers to such things as medical treatment"); *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (noting that the phrase "conditions of confinement" has a plain meaning, which "encompasses all conditions under which a prisoner is confined," including deprivation of medical care). The Seventh Circuit, in squarely addressing the issue, found that "complaints about medical treatment in prison are complaints about 'prison conditions'." *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 534 (7th Cir.1999).

Our case law requires inmates to exhaust administrative remedies under § 1997e(a) when the action affecting the prisoner was dictated by prison policy or reflected a facility-wide practice affecting the entire inmate population. *See Marvin*, 255 F.3d at 42–43. Based on these precedents, the district court correctly applied the exhaustion requirement. Plaintiff essentially complains of poor medical treatment. He wanted stronger medicine, but did not receive it; he wanted physical therapy sooner than it was prescribed. Dr. Takos examined him through the bars of his cell and never ordered the promised x-ray. We consider these allegations to be

ordinary garden variety complaints about "prison conditions."

Plaintiff nevertheless contends that the facts of his claims are more akin to the retaliatory conduct and excessive force claims considered in *Lawrence* and *Nussle*. In each of those cases, we determined that the exhaustion requirement did not apply. *Lawrence*, 238 F.3d at 186 (retaliation); *Nussle*, 224 F.3d at 106 (excessive force). As explained in *Lawrence*, "[t]he underlying principles requiring exhaustion—giving notice to administrators and allowing policy makers to change their behavior—are not served when a practice is aimed at one specific inmate rather than the prison population as a whole." 238 F.3d at 186.

The district court did not have the benefit of our views in *Lawrence* and *Nussle* because it rendered judgment before those cases were decided. In other cases where we have reviewed district court decisions issued prior to *Lawrence* and *Nussle*, we have adopted different approaches. For example, in *Marvin*, 255 F.3d at 43, we remanded for reconsideration as to whether the plaintiff's claims were subject to the exhaustion requirement of § 1997e(a) in light of this new precedent. But in *Giano*, 250 F.3d at 150–51, we ruled that certain drug testing procedures affected the entire prison population and therefore qualified as a "prison condition." We reconcile these differing approaches by observing that in *Marvin*, questions existed as to what administrative remedies were available and whether those remedies would be effective, while the trial court in *Giano* found remedies were available and the plaintiff did not deny on appeal that he had failed to exhaust them.

In the case at hand, Neal concedes that administrative remedies are available to him. In fact, part of his argument is that he has satisfied the exhaustion requirement by pursuing several grievances dur-

ing the pendency of his lawsuit. Unlike in *Marvin*, where layers of issues were identified for the district court, the issue pending before us now is readily resolved by reading the amended complaint and considering the parties' arguments. Consequently, as in *Giano*, we will resolve the matter on appeal.

■ Applying the principles of *Lawrence* and *Nussle*, plaintiff's amended complaint does not suggest he was singled out for the denial of medical services. Neal tells us that once at Attica, he took pain medication and spoke with doctors—even though such treatment did not meet his expectations. In his brief plaintiff describes his claim as one for "the deprivation of medical emergency treatment after an assault in confinement." Yet his pleadings do not use such language, and exhibits to the amended complaint indicate the assault occurred approximately six weeks before his transfer to Attica. Nor does plaintiff describe in what manner other inmates received medical care, so as to suggest that he was targeted for different treatment.

Further, Neal contends that because he alone suffered the misconduct on isolated occasions, he was singled out for mistreatment. *See Nussle*, 224 F.3d at 101 (concluding that the phrase "prison conditions" refers to circumstances affecting everyone in an area, rather than a single or momentary matter directed at a particular individual). We recognize that a lack of adequate medical care certainly is a deprivation an individual prisoner suffers as a condition of his own confinement; yet, even inadequate, untimely or incompetent medical care may simply be indicative of the level of care generally received by the entire prison population. Taken to its logical conclusion, plaintiff's argument would ultimately preclude almost all prisoner complaints from falling under the exhaus-

tion requirement. Since most prisoners file suit regarding an alleged deprivation suffered individually—as opposed to litigating claims on behalf of an entire prison population—were we to adopt the standard advanced by plaintiff, it would render § 1997e(a) a nullity. *Cf. Wilson v. Seiter*, 501 U.S. 294, 299 n. 1, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (noting that even a " 'specific act[ ] or omission[ ] directed at [an] individual prisoner[ ]' " could be described as "a condition of *his* confinement, whether or not the deprivation is inflicted upon everyone else").

*Nussle* and *Lawrence* were concerned with "particularized instances" of misconduct directed at an inmate, which would fall outside the general living conditions of the facility. *See Lawrence*, 238 F.3d at 185–86. Plaintiff's amended complaint contains no allegations that the kinds of responses he received to his medical needs were different or more particularized than the responses generally received by other prisoners. As such, it was appropriate to conclude plaintiff's allegations fell within the purview of § 1997e(a).

#### B. *Dismissal v. Continuance of Plaintiff's Action*

##### 1. Prior Case Law

Having determined that exhaustion is required, we next consider whether plaintiff's complaint should have been dismissed despite his having exhausted at least some claims during the pendency of his lawsuit. The issue is one of first impression in this Court. District courts within the Circuit have not agreed on the issue. *Compare Santiago v. Meinsen*, 89 F.Supp.2d 435, 441 (S.D.N.Y.2000) (dismissing case so that inmate could seek extension of time to file grievance), *with Cruz v. Jordan*, 80 F.Supp.2d 109, 121–23 (S.D.N.Y.1999) (staying case pending exhaustion).

At least three other circuits have held that exhausting administrative remedies after a complaint is filed will not save a case from dismissal. *See Jackson v. Dist. of Columbia*, 254 F.3d 262, 268–69 (D.C.Cir.2001) (affirming rejection of the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999) ("The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); *Perez*, 182 F.3d at 535 (7th Cir.) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."); *see also Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir.2000) ("Allowing the federal courts to fashion prison remedies before the prisons themselves have had the opportunity (and have the ability) to do so, is surely not what Congress intended when it enacted the [Prison Litigation Reform Act]."); *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir.1998) ("[E]xhaustion is now a pre-condition to suit.... Mandatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply."); *Garrett v. Hawk*, 127 F.3d 1263, 1265 (10th Cir.1997) ("Congress specifically amended the statute to ... requir[e] federal prisoners to exhaust all administrative remedies before bringing ... a claim under 42 U.S.C. § 1983."); *cf. Graves v. Norris*, 218 F.3d 884, 885–86 (8th Cir.2000) (per curiam) (affirming dismissal where some but not all claims were exhausted after filing of complaint and before district court's ruling); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir.1998) (per curiam) (affirming dismissal where plaintiff exhausted remedies after filing suit, but suggesting district court may "in certain rare instances" have

discretion not to dismiss). *But · see Williams v. Norris,* 176 F.3d 1089, 1090 (8th Cir.1999) (per curiam) (reversing district court's dismissal for failure to exhaust where "the record demonstrate[d] that [plaintiff's] grievance had been denied ... at the time the court ruled").

### 2. Reasons for Dismissal

■ We agree with the majority view expressed above and set out our reasoning below. To begin, the plain language of § 1997e(a), providing that "[n]o action shall be brought ... until such administrative remedies as are available are exhausted," suggests that exhaustion prior to commencement of a § 1983 action is mandated. *See Nussle,* 224 F.3d at 100–01 (noting that statutory text, "if clear and unambiguous on its face, is presumed to bear its plain meaning"). The Supreme Court instructs that "[w]here Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). We too have observed that § 1997e(a) *"requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all." Nussle,* 224 F.3d at 99 (emphases added); *see also id.* at 98 (describing § 1997e(a) as "add[ing] teeth" to the exhaustion requirement). Subsequent exhaustion after suit is filed therefore is insufficient.

Further, the change in language effected by the Act suggests that where required, grievances must now be fully pursued prior to filing a complaint in federal court. Section 1997e(a) formerly allowed a district court to continue a pending § 1983 case for up to 180 days in order that a prisoner be required to exhaust effective administrative remedies as were available. 42 U.S.C. § 1997e(a)(1) (1994) (amended 1996). The Act eliminated reference to the provision allowing for the continuance

of an action. Such elimination lends strong support to the conclusion that dismissal is warranted in the case at hand. *See Perez,* 182 F.3d at 537.

■ Additionally, courts must take care not to frustrate the policy concerns underlying § 1997e(a) by allowing inmate-plaintiffs to file or proceed with lawsuits before exhausting administrative remedies. This section of the Act aims to block frivolous suits by directing them to an administrative forum before they get to court. *Nussle,* 224 F.3d at 103. As other Circuits have noted, the administrative process can serve a constructive purpose in resolving inmate claims, remedying errors by prison officials, and streamlining and clarifying those issues that remain for a court to decide. *See Nyhuis,* 204 F.3d at 76; *Perez,* 182 F.3d at 535; *Alexander,* 159 F.3d at 1326 n. 11.

As the Supreme Court explained in a case pre-dating the Prison Litigation Reform Act: "[A]n inmate would be well advised to take advantage of internal prison procedures for resolving inmate grievances. When those procedures produce results, they will typically do so faster than judicial processes can. And even when they do not ..., the inmate's task in court will obviously be much easier." *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

The instant case demonstrates how the grievance process can produce favorable results. The Review Committee granted plaintiff's grievance to the extent that it learned his request for a physical therapy consult had been approved and would be soon scheduled. While this response clearly did not address all of Neal's claims, it addresses this one, at least in part. Had plaintiff waited to file his lawsuit, he could have framed his complaint accordingly.

Neal reasons that requiring him to initiate a new lawsuit is judicially inefficient. While this may be true in an individual case, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, contrary to Neal's argument of judicial inefficiency, if during the pendency of a suit, the administrative process were to produce results benefiting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. *See Nyhuis*, 204 F.3d at 74 ("The very nature of [inmate-plaintiffs'] complaints necessitates that courts expend significant and scarce judicial resources to review and refine the nature of the legal claims presented.").

We have recognized that failure to exhaust administrative remedies is usually a "curable, procedural flaw" that can be fixed by exhausting those remedies and then reinstituting the suit. *Snider v. Melindez*, 199 F.3d 108, 111–12 (2d Cir.1999). Since Neal's amended complaint was properly dismissed without prejudice, he may simply re-file his pleadings, if so advised, after fully complying with the exhaustion requirement.

## II  *Sua Sponte* Dismissal

■ Although plaintiff did not raise on appeal the issue we next discuss, we observe that when the district court dismissed plaintiff's amended complaint *sua sponte*, it did so without giving plaintiff notice and an opportunity to respond. While we do not rule on the propriety of this procedure since the matter is not squarely before us, we do note certain concerns.

Where an inmate-plaintiff seeks redress from government officers and employees, a district court is required to conduct an initial screening and to dismiss the complaint if it determines that the pleadings are frivolous, malicious or fail to state a claim. 28 U.S.C. § 1915A. The trial court in this case initially reviewed Neal's amended complaint pursuant to such authority. Dismissal for these same reasons also is required when a plaintiff is granted *in forma pauperis* status. *Id.* § 1915(e)(2)(B). We have previously held that these screening procedures do not require that a plaintiff be afforded an opportunity to respond before his complaint is dismissed. *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir.1999) (per curiam) (§ 1915A); *accord Giano*, 250 F.3d at 151 (§ 1915(e)(2)(B)).

Nonetheless, here the district court dismissed the amended complaint, not because it was frivolous or failed to state a claim, but because plaintiff failed to meet the exhaustion requirement of § 1997e(a). In *Snider*, 199 F.3d at 109, 114, where the inmate-plaintiff was also granted leave to proceed *in forma pauperis*, we held the district court erred in dismissing the case *sua sponte* for failure to exhaust without first providing notice and an opportunity to be heard as to the availability and applicability of any administrative remedies.

The distinction between these cases apparently is that 42 U.S.C. § 1997e(c) explicitly provides for the *sua sponte* dismissal of any claim that "on its face" is frivolous or malicious or fails to state a claim "without first requiring the exhaustion of administrative remedies." Thus, failure to exhaust is an entirely independent reason for dismissal, distinct from the others and not mandated by § 1997e(c) or § 1915(e)(2)(B). *See Snider*, 199 F.3d at 112. Since the availability of administrative remedies for an inmate's particular

grievance is typically not clear from the face of a complaint, the better practice in a given case may be to afford notice and an opportunity to respond before dismissal when exhaustion is the basis for that action. *See Marvin,* 255 F.3d at 43 (remanding with instructions to secure briefing and consider what administrative remedies are available for purposes of exhaustion); *Snider,* 199 F.3d at 113–14 (remanding so that plaintiff may be heard on the issue of availability of administrative remedies). In future cases we leave it to the district court to determine, based on the cited authorities, which procedural practice is most appropriate.

## CONCLUSION

In accordance with the foregoing, the judgment is affirmed.