**Trevor GRIFFITH, Plaintiff,**

v.

**Donald SELSKY, Director of Special Housing Unit, et al., Defendants.**

No. 02–CV–6096L.

United States District Court, W.D. New York.

July 22, 2004.

Trevor Griffith, Pine City, NY, Plaintiff Pro Se.

Charles D. Steinman, New York State Attorney General's Office, Rochester, NY, for Defendants.

### DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Trevor Griffith, appearing *pro se,* commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), asserts a number of claims against several DOCS employees in connection with some incidents that occurred in May 1999 and October 2000, while plaintiff was incarcerated at Wende Correctional Facility. Defendants have moved for summary judgment on the ground that plaintiff has not exhausted his administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

### STATUTORY FRAMEWORK

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [section 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." New York State regulations provide for a three-step administrative review process. *See* 7 N.Y.C.R.R. § 701.7. First, "an inmate must submit a complaint to the Grievance Clerk within 14 calendar days of an alleged occurrence ...." 7 N.Y.C.R.R. § 701.7(a)(1). The grievance is then submitted to the inmate grievance resolution committee ("IGRC") for investigation and review. If the IGRC's decision

is appealed, the inmate may appeal to the superintendent of the facility, and if the superintendent's decision is appealed, the Central Office Review Committee ("CORC") makes the final administrative determination. *See* 7 N.Y.C.R.R. § 701.7. In general, it is only after exhausting all three levels of the administrative review that a prisoner may seek relief pursuant to 42 U.S.C. § 1983 in federal court. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001); *Santos v. Hauck,* 242 F.Supp.2d 257, 259 (W.D.N.Y.2003).

## FACTUAL BACKGROUND

In May 2002, plaintiff filed a grievance concerning most of the matters raised in this lawsuit. Defendants' Appendix ("Def.App.") (Docket # 38) Ex. 1(B). The grievance was rejected by the grievance supervisor as untimely. Def.App. Ex. 1(C). The grievance supervisor stated that "[t]here [wa]s no record of [plaintiff] utilizing the grievance program in October, November of [sic] December of 2000," and that plaintiff had "failed to provide any mitigating circumstances" for his failure to timely file a grievance. *Id.*

Plaintiff then filed a grievance against the grievance supervisor, alleging that he had filed a grievance in November 2000, and that it was "not [plaintiff's] fault if the complaint was 'misplaced,' 'thrown away' or whatever *other* excuse Wende wants to give for no [sic] 'showing' a record of it." Def.App. Ex. 1(D). The grievance was denied on the merits, Def.App. Ex. 1(E), and on appeal, CORC affirmed the denial. Def.App. Ex. 1(F).

In support of their motion, defendants have submitted an affidavit of Thomas G. Eagen, the Director of the DOCS Inmate Grievance Program. He states that a search of the CORC database does not reveal any record of plaintiff having appealed to CORC with respect to any of the claims that plaintiff has raised in this lawsuit. Def.App. Ex. 1 ¶ 5. He states that CORC records indicate that plaintiff has taken only two appeals to CORC: one in 1995, concerning an incident unrelated to this lawsuit, and the 2002 appeal from the denial of plaintiff's grievance against the grievance supervisor. *Id.* ¶ 4 and Ex. 1(A).

Eagen also states that the grievance file with respect to the 2002 grievance contains a copy of a letter, dated November 25, 2000, from plaintiff to Eagen, which states:

> As of the above date, I have not received a final determination/resolution of my grievance which was filed on November 11th, 2000. As a result, I'm filing this as a notice of my appeal of the non-action taken by the I.G.R.C. office at the facility level. It has been more than the (10) ten days allowed in the guidelines of Directive # 4040.

Def.App. Ex. 1(G). Eagen states, however, that he never received this letter prior to June 2002, when it was included as "background material" in plaintiff's 2002 grievance appeal. Eagen Aff. ¶ 12.

In response to defendants' motion, plaintiff states in an affidavit that he filed a grievance in November 2000. He states that after he filed the grievance, he was interviewed concerning the grievance by one Sergeant Cestano. Plaintiff's Aff. (Docket # 42) ¶¶ 1, 2. Plaintiff states that he heard nothing more about this grievance.

Plaintiff has also submitted a statement[1] by another inmate, Thomas Jeffer-

---

1. The statement is unsworn. Plaintiff states that when he realized that he would not be able to obtain a notarized statement from Jefferson before plaintiff was moved to a different area within his facility in December 2003, he asked Jefferson to give him an unsworn statement. Although a party opposing summary judgment must ordinarily submit affidavits in opposition, under the circum-

son, who states that he was working as a representative on the IGRC at Wende in November 2000, and that he recalls plaintiff's grievance that was submitted at that time. He states that he particularly remembers this grievance because he witnessed some of the events that gave rise to it. Docket # 41.

In addition, shortly after plaintiff filed his complaint in this action, the Court issued a Memorandum and Order directing him to submit proof that he had exhausted his administrative remedies as to the claims raised in this action. Docket # 3. Plaintiff submitted a response, with documentary exhibits, indicating that he filed a grievance on or about November 11, 2000. Docket # 4. He also submitted copies of letters that he wrote to the IGRC supervisor and Eagen, stating that plaintiff sought to appeal from "the non-action taken by the I.G.R.C. office" on his grievance. *Id.* He stated that he received no response. Based on that submission, the Court ruled that, "[a]ccepting plaintiff's allegations as true, . . . he has offered sufficient claims of exhaustion to satisfy this initial review." Docket # 5 at 4.

## DISCUSSION

■ Based on the evidence submitted, I deny defendants' motion, with one exception, as noted below. "Although '[g]enerally, corrections officials are entitled to strict compliance with administrative procedures,' there are circumstances in which an inmate plaintiff's failure to exhaust his remedies may be excused." *Jenkins v. Raub*, 310 F.Supp.2d 502, 503 (W.D.N.Y. 2004) (quoting *Rivera v. Goord*, 253 F.Supp.2d 735, 746 (S.D.N.Y.2003)). I believe that this case presents such circumstances.

■ There is evidence that plaintiff made reasonable attempts to pursue his grievance in November 2000, and that his inquiries and attempts to appeal it to the next level were met with silence by DOCS officials. Whether that silence was deliberate or accidental, the blame for it does not lie at plaintiff's feet. Furthermore, when plaintiff again attempted to grieve these matters in 2002, his grievance was rejected on the ground that plaintiff had not filed a grievance in 2000. The evidence submitted by plaintiff indicates that this was incorrect.

Under these circumstances, I find that plaintiff has sufficiently exhausted his administrative remedies. *See O'Connor v. Featherston*, No. 01 Civ. 3251 (HB), 2002 WL 818085, at *2 (S.D.N.Y. Apr. 29, 2002) (exhaustion requirement may be satisfied "where . . . an inmate makes a 'reasonable attempt' to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts . . ."). As the Court stated in *Lane v. Doan*, 287 F.Supp.2d 210, 212–13 (W.D.N.Y.2003), "it appears that plaintiff did make 'reasonable attempts' to file and prosecute his grievances. There is no indication that he simply bypassed the grievance procedure; on the contrary, plaintiff has well documented his efforts to grieve the matters at issue here, and it appears that DOCS simply ignored many of his grievances and inquiries." *See Lewis v. Gagne*, 281 F.Supp.2d 429, 436 (N.D.N.Y.2003) ("The allegations in this case do not amount to the classic

stances here I will accept Jefferson's statement for purposes of deciding defendants' motion. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir.1985) (court deciding a motion for summary judgment can consider evidence that would not be admissible at trial, if it appears that admissible evidence will be available at trial).

frivolous claim Congress sought to 'filter out' in enacting the PLRA").

Although defendants contend that this Court dismissed a complaint for failure to exhaust in a "factually identical case," Defendants' Memorandum of Law at 6, the case referred to, *Lara v. Klen,* 02–CV–6638, is factually distinguishable. The plaintiff in *Lara* had simply filed an untimely grievance, which was denied as untimely, and he raised no mitigating circumstances for the late filing. *See Lara,* Decision and Order (W.D.N.Y. Aug. 4, 2003). Here, plaintiff has submitted evidence that he did file a timely grievance, and that his attempts to pursue it were frustrated.

Although it thus appears that plaintiff did grieve most of the claims that he raises here, the record does not indicate that plaintiff ever filed any grievance with respect to his claims against defendant Zydal. Accordingly, defendants' motion for summary judgment is granted with respect to plaintiff's claim against defendant Zydal.

## CONCLUSION

Defendants' motion for summary judgment (Docket # 35) is granted in part and denied in part. The motion is granted as to plaintiff's claim against defendant K. Zydal is granted, and that claim is dismissed. In all other respects, the motion is denied.

IT IS SO ORDERED.