BARRINGTON D. PARKER, Circuit Judge:
*79 This appeal from an order of the United States District Court for the Southern District of New York (Forrest, J. ) requires us to decide whether the District Court properly sua sponte declined to exercise supplemental jurisdiction over plaintiffs' state-law claims and dismissed the case without affording the parties notice or an opportunity to be heard.
Plaintiffs, several low-wage laundromat workers, sued their employers under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"), § 190 et seq ., alleging that their employers failed to pay plaintiffs the minimum wage, overtime, and failed to provide various required wage notices and statements.
The case was litigated for nearly two years, through discovery and summary judgment. The parties' cross motions for partial summary judgment were granted in part and denied in part, ultimately leaving various FLSA and NYLL claims to be resolved at trial. Three weeks prior to the start of trial and two weeks prior to the final pretrial conference, the parties filed their required pretrial submissions, which omitted mention of the FLSA and focused on the alleged NYLL violations. Shortly before the final pretrial conference, plaintiffs filed a letter that noted, among other things, that they intended to pursue only their NYLL claims at trial because they had concluded, on the basis of an intervening clarification in Second Circuit law, that any potential recovery under the FLSA would be subsumed by the recovery available under the NYLL.
For reasons that are inadequately supported by the record, the District Court concluded that plaintiffs' inclusion of the FLSA claims had all along been disingenuous and was a stratagem to manufacture federal jurisdiction. Acting on this assumption, the day before the final pretrial conference, and without affording the parties notice or an opportunity to be heard, the District Court sua sponte issued an order that deemed plaintiffs to have abandoned their federal-law claims. The District Court cancelled the pretrial conference and the trial scheduled to start the following week. The District Court then declined to exercise supplemental jurisdiction over plaintiffs' state-law claims and dismissed them without prejudice, leaving the parties to start from the beginning in state court, and ordered the case closed. Plaintiffs appeal and we vacate and remand for further proceedings.
BACKGROUND
The procedural history of this case is important for understanding the sequence *80 of events that precipitated the District Court's order. In September 2015, plaintiffs filed their original complaint, bringing claims under the FLSA and NYLL. Plaintiffs later amended their complaint and, in June 2016, filed the operative complaint, the Third Amended Complaint ("TAC"). The TAC alleged seven claims against varying groups of defendants: (1) failure to pay minimum wages in violation of the FLSA, 29 U.S.C. § 206 ; (2) failure to pay overtime wages in violation of the FLSA, 29 U.S.C. § 207 ; (3) failure to pay minimum wages in violation of NYLL § 652; (4) failure to pay overtime wages in violation of the NYLL, see 12 N.Y.C.R.R. § 142-2.2 (incorporating the FLSA overtime definition into the NYLL); (5) failure to provide required wage notices and wage statements in violation of NYLL § 195; (6) failure to pay spread-of-hours payments in violation of the NYLL, see 12 N.Y.C.R.R. § 142-2.4 ; and (7) failure to properly calculate wage deductions in violation of NYLL § 193. As to each claim, plaintiffs alleged that defendants' violations were "willful" under § 255(a) of the FLSA, and § 198 of the NYLL. As damages, plaintiffs sought unpaid wages, prejudgment interest, liquidated damages, and attorneys' fees and costs.
According to the TAC and the various declarations submitted in support of the motions for summary judgment, plaintiffs worked at laundromats in New York City owned by various defendants. Plaintiffs' duties included loading and unloading laundry machines and dryers, washing, drying, and folding clothes, and occasionally working as cashiers. Plaintiffs alleged that defendants systematically underpaid them for a number of years. The three plaintiffs are seeking approximately $13,000 in unpaid wages and other relief available under the wage-and-hour laws.
Discovery included a number of depositions (at least eight), and the production of documentary evidence, such as pay stubs, pay logs, work schedules, operating agreements, and tax returns. In January 2016, the District Court conditionally certified the case as an FLSA collective action under 29 U.S.C. § 216(b). In October 2016, the District Court denied plaintiffs' motion to certify the case as a class action under Federal Rule of Civil Procedure 23(b)(3).[1]
Following discovery, plaintiffs and two subsets of defendants filed cross motions for partial summary judgment. The District Court granted these motions in part and denied them in part. The District Court granted summary judgment to plaintiffs on the issue of whether the conduct of certain defendants was willful, entitling them to liquidated damages under the FLSA and NYLL (if they later proved their underlying wage-and-hour claims). The District Court also granted summary judgment to plaintiffs on whether one of the defendants was an individual employer under the FLSA and NYLL and on plaintiffs' claim of wage notice and statement violations under NYLL §§ 195(1) and 195(3). The District Court granted summary judgment to defendants Thank You & Good Luck Corp., Zeng Lan Wang, 115th Street and First Avenue Laundromat Inc., Exclusive Management Solution Group, Inc., and Dimitri Berezovsky on plaintiffs' FLSA claims on the ground that those defendants were not covered by the FLSA or could not be liable under a theory of successor liability. Finally, the District Court determined that it would maintain supplemental jurisdiction over plaintiffs' NYLL claims over those defendants. The District Court otherwise *81 denied the parties' summary judgment motions.
After considerable back and forth over scheduling, the District Court set August 2, 2017, as the trial date, with pretrial materials due July 13, motions in limine due July 14, and oppositions due July 21. A final pretrial conference was set for July 27, 2017, roughly one week before the first day of trial.
On July 14, the parties filed their pretrial submissions, which included a joint final pretrial order, proposed jury instructions, a proposed verdict form, and proposed voir dire questions. The parties anticipated a short three-day trial with around 11 witnesses and various documents. The parties' proposed jury instructions did not include any mention of the FLSA and instead focused on liability under the NYLL claims, except for several references to model jury instructions for FLSA liability, when presumably liability under the FLSA is coextensive with liability under the NYLL. The proposed jury instructions section for "Hours Worked Definition" also contained references to two provisions of the Code of Federal Regulations regarding rest breaks and meal breaks, 29 C.F.R. §§ 785.18 - 19. The proposed verdict form contained no references to the FLSA and was instead limited to liability and various findings under the NYLL.
The parties also filed motions in limine . On July 22, plaintiffs filed an opposition to defendants' motion in limine , in which they recounted the procedural history of the case, noting that they filed the lawsuit asserting violations of the FLSA and NYLL. But, in a footnote, plaintiffs stated, "Plaintiffs intend to pursue at trial only their NYLL claims since the NYLL provides all relief that the FLSA provides."
On July 26, the day before the final pretrial conference and one week before the start of the trial, the District Court, without affording the parties notice or an opportunity to be heard, issued the order that is the subject of this appeal. In that order, the District Court described the parties' pretrial filings and observed that those filings "focus solely on the New York Labor Law." Catzin v. Thank You & Good Luck Corp. , No. 15 Civ. 7109 (KBF), 2017 WL 3189871, at *1 (S.D.N.Y. July 26, 2017). Noting that plaintiffs had stated that they "intend to pursue at trial only their NYLL claims," the District Court concluded that "plaintiffs have expressly abandoned and waived their claims under the Fair Labor Standards Act," which were their only federal-law claims. Id.
The District Court went on to address the factors district courts must evaluate when determining whether to continue to maintain supplemental jurisdiction when one of the four prongs of 28 U.S.C. § 1367(c) is applicable. These are the familiar factors of judicial economy, convenience, fairness, and comity. See Carnegie-Mellon Univ. v. Cohill , 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Noting the usual rule that when "all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims," id. at 350, 108 S.Ct. 614 n.7, the District Court concluded that fairness and comity weighed strongly against exercising supplemental jurisdiction but that there was "some judicial economy to be gained by the exercise of supplemental jurisdiction" because "it is now the eve of trial." Catzin , 2017 WL 3189871, at *2. In the end, however, the District Court concluded that while plaintiffs' "motives are not entirely clear, it appears to the Court that plaintiffs may have strategically asserted FLSA claims for the purpose of manufacturing jurisdiction, when they truly intended to *82 litigate only claims under the New York Labor Law." Id. The District Court concluded that the exercise of supplemental jurisdiction would therefore "improperly reward plaintiffs' actions and encourage similar behavior in the future." Id. The District Court accordingly dismissed plaintiffs' NYLL claims, leaving them to be refiled in state court, cancelled the final pretrial conference and the trial, and closed the case. This appeal followed. We review a district court's determination of whether to exercise supplemental jurisdiction for abuse of discretion. Shahriar v. Smith & Wollensky Rest. Grp., Inc. , 659 F.3d 234, 243 (2d Cir. 2011).
DISCUSSION
We conclude that by failing to exercise supplemental jurisdiction under the circumstances of this case, the District Court committed three interrelated errors. First, it acted sua sponte without affording the parties notice and an opportunity to be heard. Second, it impugned, on the record, plaintiffs' counsel's motives without affording any notice about this assessment of counsel's conduct or any opportunity to explain himself. Finally, the District Court's analysis of the factors considered under 28 U.S.C. § 1367(c) for determining whether to exercise supplemental jurisdiction was inadequate.
First, as noted, the District Court undertook the supplemental jurisdiction inquiry sua sponte and dismissed the case without affording the parties notice or any opportunity to be heard. An opportunity to be heard prior to dismissing a case is not a mere formality and the reasons are straightforward: "No principle is more fundamental to our system of judicial administration than that a person is entitled to notice before adverse judicial action is taken against him." Lugo v. Keane , 15 F.3d 29, 30 (2d Cir. 1994) (per curiam). This is because "providing the adversely affected party with notice and an opportunity to be heard plays an important role in establishing the fairness and reliability of" the court's decision and "avoids the risk that the court may overlook valid answers to its perception of defects in the plaintiff's case." Snider v. Melindez , 199 F.3d 108, 113 (2d Cir. 1999). Sua sponte dismissals without notice and an opportunity to be heard "deviate from the traditions of the adversarial system" and "tend to produce the very effect they seek to avoid-a waste of judicial resources-by leading to appeals and remands." Perez v. Ortiz , 849 F.2d 793, 797 (2d Cir. 1988).
We have held that dismissing a case without an opportunity to be heard is, at a minimum, bad practice in numerous contexts and is reversible error in others. For example, generally in the context of a dismissal for failure to state a claim, "[t]he district court has no authority to dismiss a complaint for failure to state a claim upon which relief can be granted without giving the plaintiff an opportunity to be heard." Square D Co. v. Niagara Frontier Tariff Bureau, Inc. , 760 F.2d 1347, 1365 (2d Cir. 1985) (Friendly, J. ). While in certain circumstances a sua sponte dismissal "may be appropriate," such as "in cases involving frivolous in forma pauperis complaints or frivolous habeas petitions," Perez , 849 F.2d at 797 (citations omitted), these circumstances require that "it is unmistakably clear that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise defective," Snider , 199 F.3d at 113. This principle also applies in the context of sua sponte dismissals without notice for lack of subject matter jurisdiction. See Digitel, Inc. v. MCI Worldcom, Inc. , 239 F.3d 187, 189 n.2 & 190 (2d Cir. 2001) (per curiam) (construing the district court's order "as one deciding ... sua *83 sponte [a] Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction" and stating that "such lack of notice-even when the court has authority to act sua sponte -is to be avoided" but affirming the district court's order on its merits). In general, a district court's failure to provide an opportunity to be heard prior to a sua sponte dismissal, as Judge Friendly noted, "is, by itself, grounds for reversal." Square D, 760 F.2d at 1365 (quoting Lewis v. New York , 547 F.2d 4, 5-6 & n.4 (2d Cir. 1976) ).
This was not a case in which "it is unmistakably clear that the court lacks jurisdiction." Snider , 199 F.3d at 113. To the contrary, it is indisputable that the District Court possessed supplemental jurisdiction. The District Court only faced the discretionary inquiry of whether to discontinue that jurisdiction. See 28 U.S.C. § 1367(c) (providing that the district court "may decline to exercise supplemental jurisdiction" if one of four circumstances applies (emphasis added) ). Here, the District Court identified § 1367(c)(3), which is when "the district court has dismissed all claims over which it has original jurisdiction," as the applicable prong of § 1367(c) that could provide an occasion to consider whether to decline to exercise supplemental jurisdiction. Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims. See Cohill , 484 U.S. at 350 n.7, 108 S.Ct. 614. But, because there will be cases where dismissal will not be appropriate simply by virtue of the fact that the federal-law claims have been eliminated prior to trial, district courts must still conduct the inquiry and carefully evaluate the relevant factors. Indeed, we have upheld the exercise of supplemental jurisdiction even when all federal-law claims were eliminated prior to trial, for example, in long-pending cases presenting no novel issues of state law where "discovery had been completed, dispositive motions had been submitted, and the case would soon be ready for trial." Kroshnyi v. U.S. Pack Courier Servs., Inc. , 771 F.3d 93, 102 (2d Cir. 2014) (citing Raucci v. Town of Rotterdam , 902 F.2d 1050, 1055 (2d Cir. 1990) ); see, e.g. , Valencia ex rel. Franco v. Lee , 316 F.3d 299, 305-06 (2d Cir. 2003) (collecting cases).
Hearing from the parties either in person or on the papers is typically an essential component of the inquiry into whether to decline to exercise supplemental jurisdiction because, as this case illustrates, doing so goes a long way towards reasoned decisionmaking and enhances the fairness of the proceedings. At the time this action was commenced in the District Court in 2015 there was uncertainty as to whether multiple sets of liquidated damages could be obtained under both the FLSA and the NYLL for the same conduct. But, in December 2016, we noted in a summary order that the NYLL and FLSA liquidated damages provisions are materially identical and can provide only one overlapping award of liquidated damages for the same conduct. See Chowdhury v. Hamza Express Food Corp. , 666 F. App'x 59, 61 (2d Cir. 2016) (summary order). This conclusion was later adopted as the law of the Circuit in an opinion. See Rana v. Islam , 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").
Had the District Court heard from the parties, light might have been shed on whether this clarification in the law had impacted the case. The plaintiffs could have explained whether they were trying to streamline the issues for the jury by not having to prove FLSA elements not required for NYLL liability, under which all their recovery could be obtained; whether *84 they intended to abandon their FLSA claims; and whether they would continue to do so if the result would be an 11th-hour dismissal of the case. Insofar as the District Court based its determination on its assessment that plaintiffs were forum shopping and never actually intended to litigate their FLSA claims, giving plaintiffs an opportunity to be heard on this view might have enabled them to explain why they brought FLSA claims and litigated those claims for nearly two years, through discovery, and through summary judgment. Such an opportunity to be heard would have increased the fairness of the proceedings and minimized the risk that the court may have overlooked valid answers to its concerns. See Snider , 199 F.3d at 113.
We note that an opportunity to be heard on whether to exercise supplemental jurisdiction may be inherent in the course of pre-trial proceedings such as those resolving motions to dismiss or for summary judgment. In such situations, a district court need not provide a separate opportunity to be heard beyond the briefing and resolution of such motions. But, insofar as a district court undertakes, sua sponte , the inquiry into whether to maintain supplemental jurisdiction under circumstances similar to those presented here, it must give the parties notice and an opportunity to be heard prior.
Second, the District Court's error in declining to retain supplemental jurisdiction was exacerbated by its belief that plaintiffs were forum shopping and had brought their FLSA claims in order to manufacture federal jurisdiction. The problem with this explanation is that it is unsupported by the record and appears at odds with the course of the litigation. As noted, the case-including the federal-law claims-was vigorously litigated for years and involved significant discovery, dispositive motions, and a class certification motion that the plaintiffs
attempted to appeal to the Second Circuit. The case was ready for trial. We cannot glean from the record why counsel would have gone through all this effort if the federal-law claims were simply a ploy to get into federal court. The District Court itself noted the tenuousness of its conclusion, stating that, while plaintiffs' motives "are not entirely clear," it nonetheless "appears" that plaintiffs "may" have strategically brought their FLSA claims "for the purpose of manufacturing jurisdiction, when they truly intended to litigate only claims under the New York Labor Law." Catzin , 2017 WL 3189871, at *2. The District Court went on to acknowledge "that it is now the eve of trial and there is some judicial economy to be gained by the exercise of supplemental jurisdiction. However, the Court believes that doing so would improperly reward plaintiffs' actions and encourage similar behavior in the future." Id. The District Court cited nothing in the record-other than the purported recent withdrawal of the FLSA claims-and made no adequate findings to support this determination. We do not think the District Court should have reached such conclusions about plaintiffs' motives while simultaneously acknowledging that those motives were "not entirely clear." The District Court suggested that plaintiffs' counsel had "strategically" asserted FLSA claims in order to "manufactur[e] jurisdiction" and saw dismissal of the case as a form of sanction so that the court would not "improperly reward plaintiffs' actions and encourage similar behavior in the future." Id. This reasoning comes perilously close to charging plaintiffs' counsel with unethical behavior, something a court should never do except with the support of a careful inquiry, thorough *85 analysis, and thoughtfully expressed findings.
Third, we are not convinced that the District Court properly conducted the inquiry into whether to continue to exercise supplemental jurisdiction under 28 U.S.C. § 1367. As we have stated, that provision requires that "once it is determined that a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy, supplemental jurisdiction over the related claim is mandatory." Itar-Tass Russian News Agency v. Russian Kurier, Inc. , 140 F.3d 442, 447 (2d Cir. 1998). In order for a district court to decline to exercise supplemental jurisdiction, "where section 1367(a) is satisfied, the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." Shahriar , 659 F.3d at 245.
Section 1367(c) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under [ § 1367(a) ] if-
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."
28 U.S.C. § 1367(c). If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction. If one of those categories applies, "a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in Gibbs : economy, convenience, fairness, and comity." Jones v. Ford Motor Credit Co. , 358 F.3d 205, 214 (2d Cir. 2004) (citing United Mine Workers of America v. Gibbs , 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ); see also Kolari v. New York-Presbyterian Hosp. , 455 F.3d 118, 122 (2d Cir. 2006) ("Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity."). The declining of supplemental jurisdiction must actually promote those values as "the fact that one or more of the grounds for declining to exercise supplemental jurisdiction set forth in section 1367(c) applies does not mean that dismissal is mandated." Oneida Indian Nation of New York v. Madison County , 665 F.3d 408, 439 (2d Cir. 2011). We have emphasized both that, insofar as a § 1367(c) category is applicable, supplemental jurisdiction is a "doctrine of discretion, not of plaintiffs' right," Kolari , 455 F.3d at 122 (quoting Gibbs , 383 U.S. at 726, 86 S.Ct. 1130 ), and that "[i]n providing that a district court 'may' decline to exercise [supplemental] jurisdiction, [ § 1367(c) ] is permissive rather than mandatory," Valencia , 316 F.3d at 305.
The District Court invoked § 1367(c)(3) as the statutory basis that triggered the discretionary inquiry of whether to exercise supplemental jurisdiction. It determined that plaintiffs had abandoned their federal-law claims, and then it, sua sponte , conducted the inquiry into whether to continue to exercise supplemental jurisdiction. The District Court framed its analysis by citing Cohill (which was decided prior to the codification of § 1367 in 1990) for the proposition that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." Catzin , 2017 WL 3189871, at *2 (quoting Cohill , 484 U.S. at 350 n.7, 108 S.Ct. 614 ).
*86 But, the District Court's application of the § 1367(c)(3) factors was inherently speculative. Because it did not hear from the parties, the record does not afford us an adequate basis for examining whether the District Court adequately assessed the § 1367(c)(3) factors.
When § 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors. The principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction "in the usual case" clearly does not mean that the balance of the factors always points that way. Indeed, Cohill stated that this principle "does not establish a mandatory rule to be applied inflexibly in all cases." Cohill , 484 U.S. at 350 n.7, 108 S.Ct. 614. Nor does the record in this case establish that it falls within the ambit of the "usual case," where judicial economy, convenience, fairness, and comity counsel against exercising supplemental jurisdiction when § 1367(c)(3) applies.
Our review of the record before us leaves us with significant doubt as to how the District Court viewed the supplemental jurisdiction factors. Supplemental jurisdiction was revoked one day prior to the final pretrial conference and a week before the scheduled trial date. The trial was to be short, roughly three days, and the parties and the District Court were ready for trial. The case presented no issues of special state court expertise nor any novel questions of state law or state-law causes of action that would be better decided in state court. Instead, wage-and-hour cases like this one are quotidian, and federal courts are well experienced in presiding over them, even when they involve claims under the NYLL for which there is no FLSA equivalent, such as for failure to provide wage notices. The District Court did not explain how comity between state and federal courts is advanced by saddling a state court colleague with a wage-and-hour case of the type that is tried in federal court every day. Nor does the record lend itself to an understanding as to how convenience or fairness was served by setting backwards the course of a case the parties had vigorously litigated for nearly two years and causing them to expend who knows how much time, legal fees, and distraction starting over in state court.
Litigants come to court to have their problems solved. The three plaintiffs here are immigrant laborers who are seeking allegedly unpaid minimum wages and overtime wages totaling roughly $13,000 (along with liquidated damages) for washing, drying, and folding clothes. While this amount of money may be modest to some, it could well be significant to individuals in plaintiffs' circumstances. The fact that the case has been vigorously litigated for so long is to us an indication of its importance to the parties. The defendants are small business owners of laundromats who presumably have experienced years of legal bills and distraction from the responsibilities of running their businesses. The record yields no clarity as to how judicial economy, convenience, fairness, or comity might be served by requiring the parties to expend additional years as well as dollars re-litigating in state court. While we are certainly mindful of the fact that district courts face significant caseloads and real pressure to move cases along, the pressure to close cases must not overshadow the federal courts' paramount role of being a forum where disputes are efficiently and fairly resolved. After all, as the very first Rule of Civil Procedure provides, procedure in the district courts is meant "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.
CONCLUSION
For the foregoing reasons, the order of the District Court is VACATED and the *87 case is REMANDED for further proceedings consistent with this opinion.

Plaintiffs sought to appeal the denial of their motion for class certification under Rule 23(f). In February 2017, this Court denied leave to appeal.