20-1685-pr
*Ethridge v. Bell*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2021

(Argued: June 9, 2022     Decided: September 20, 2022)

No. 20-1685-pr

_____

JAMEL ETHRIDGE,

*Petitioner-Appellant,*

— v. —

EARL BELL,

*Respondent-Appellee.*

_____

Before:          LYNCH, BIANCO, and NARDINI, *Circuit Judges.*

Petitioner-appellant Jamel Ethridge appeals from a judgment of the United States District Court for the Eastern District of New York (Cogan, *J.*), dismissing his *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, and an order denying his motion for reconsideration. Ethridge challenged his conviction on the ground that the state court erroneously denied his motion to suppress a gun seized during an allegedly unlawful search. Without giving Ethridge prior notice and an opportunity to be heard, the district court dismissed the petition *sua sponte,*

concluding that his Fourth Amendment claim could not provide a basis for habeas relief under *Stone v. Powell*, 428 U.S. 465 (1976), because Ethridge had a full and fair opportunity to litigate the claim in state court.

This appeal presents two legal issues: (1) whether a district court may dismiss a petition *sua sponte* under *Stone* without providing a petitioner notice and an opportunity to be heard; and (2) if such notice and an opportunity to be heard are required, whether Ethridge's subsequent discussion of the *Stone* issue in his motion for reconsideration, which the district court then denied, satisfied that requirement.

We hold that, although a district court has the authority to raise the *Stone* issue *sua sponte*, a habeas petitioner is entitled to notice and an opportunity to be heard before a petition is dismissed under *Stone*. We further conclude that, in this case, the district court did not comply with that procedure, and the denial of a post-judgment motion for reconsideration, which objects to the *sua sponte* dismissal under *Stone*, is not an adequate substitute for that requirement.

Accordingly, we **VACATE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

> JONATHAN I. EDELSTEIN, Edelstein & Grossman, New York, NY, *for Petitioner-Appellant*.
>
> MARGARET A. CIEPRISZ (Barbara D. Underwood, Nikki Kowalski, Andrew W. Amend, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, NY, *for Respondent-Appellee*.

JOSEPH F. BIANCO, *Circuit Judge*:

Petitioner-appellant Jamel Ethridge appeals from a judgment of the United States District Court for the Eastern District of New York (Cogan, *J.*), dismissing his *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, and an order denying his motion for reconsideration. Ethridge challenged his conviction on the ground that the state court erroneously denied his motion to suppress a gun seized during an allegedly unlawful search. Without giving Ethridge prior notice and an opportunity to be heard, the district court dismissed the petition *sua sponte*, concluding that his Fourth Amendment claim could not provide a basis for habeas relief under *Stone v. Powell*, 428 U.S. 465 (1976), because Ethridge had a full and fair opportunity to litigate the claim in state court. In *Stone*, the Supreme Court held that a petitioner may not obtain habeas relief under the Fourth Amendment on the ground that the state court erroneously declined to suppress evidence obtained in an unlawful search if he had a full and fair opportunity to litigate the claim in state court. *See* 428 U.S. at 494.

This appeal presents two legal issues: (1) whether a district court may dismiss a petition *sua sponte* under *Stone* without providing a petitioner notice and an opportunity to be heard; and (2) if such notice and an opportunity to be heard

3

are required, whether Ethridge's subsequent discussion of the *Stone* issue in his motion for reconsideration, which the district court then denied, satisfied that requirement.

We hold that, although a district court has the authority to raise the *Stone* issue *sua sponte*, a habeas petitioner is entitled to notice and an opportunity to be heard before a petition is dismissed under *Stone*. We further conclude that, in this case, the district court did not comply with that procedure, and the denial of a post-judgment motion for reconsideration, which objects to the *sua sponte* dismissal under *Stone*, is not an adequate substitute for that requirement.

Accordingly, we **VACATE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## BACKGROUND

### I.      Ethridge's Arrest and State Court Proceedings

In May 2015, police officers observed Ethridge using a cell phone while driving. When the officers attempted to stop his car, Ethridge sped away and led the officers on a chase. After committing numerous traffic violations and crashing

into four parked vehicles, Ethridge abandoned the car and fled on foot. He was apprehended shortly thereafter.

During his arrest, Ethridge told the officers that he had been driving a rental vehicle. With Ethridge's consent, the officers entered the car to search for the rental agreement. As part of that search, the officers inspected the trunk and found a gun, which was wrapped in a t-shirt and placed in a shopping bag. Additionally, the officers discovered ten glassine envelopes of heroin on Ethridge's person.

On June 4, 2015, Ethridge was indicted in the Queens County Supreme Court for various offenses under New York state law, including second and third-degree criminal possession of a weapon, seventh-degree criminal possession of a controlled substance, fourth-degree criminal mischief, third-degree unlawful fleeing in a motor vehicle, and several traffic infractions. Following the indictment, Ethridge moved to suppress, among other things, the gun seized from the rental car, arguing that it was obtained in violation of his Fourth Amendment rights.[1] Ethridge asserted that the gun was obtained during an unlawful search because, although he had authorized the officers to search the car for the rental

---

[1] Ethridge also moved to suppress the heroin found on his person and certain statements he made to the police officers during the arrest. In his habeas petition, Ethridge did not challenge the trial court's rulings regarding the admissibility of that evidence. Instead, his petition focused only on the trial court's denial of his motion to suppress the gun.

5

agreement, his consent extended only to the cab of the car, not the trunk where the gun was found.

After conducting an evidentiary hearing, the trial court denied Ethridge's motion to suppress the gun. The trial court concluded that Ethridge's consent to the search of the car included the trunk. In the alternative, the trial court found that Ethridge had no standing to challenge the search of the car because it was rented by his girlfriend, and that, in any event, he had no reasonable expectation of privacy in the car once he abandoned it.

On March 23, 2017, Ethridge pled guilty to the indictment, reserving the right to appeal any issue arising from the court's pretrial rulings, including those related to his suppression motion. On May 9, 2017, Ethridge was sentenced to seven years' imprisonment and five years of supervised release.

Ethridge appealed his judgment of conviction to the Appellate Division, Second Department, challenging the trial court's denial of his motion to suppress the gun under the Fourth Amendment. Ethridge again argued that the gun should have been suppressed because the search of the car's trunk exceeded the scope of his consent. He also contested the trial court's finding that he lacked standing to challenge the search and asserted that he had a reasonable expectation of privacy

6

in the car, which he did not intend to abandon. On August 21, 2019, the Second

Department affirmed the conviction, finding that the trial court properly denied

the motion to suppress the gun because the evidence established that Ethridge

abandoned the car, "thereby undermining any claim he may have had to an

expectation of privacy in the vehicle or its contents," and thus, he lacked standing

to challenge the search. *People v. Ethridge*, 175 A.D.3d 552, 553 (2d Dep't 2019).

Although Ethridge sought leave to appeal the Second Department's

decision to the New York Court of Appeals, his application was denied.

## II.    Federal Habeas Proceeding

On March 13, 2020, Ethridge filed a *pro se* petition for a writ of habeas corpus

under Section 2254 in the United States District Court for the Eastern District of

New York. He challenged his conviction under the Fourth Amendment on the

ground that the state court erroneously denied his motion to suppress the gun

because, contrary to the state court decision, he had standing to challenge the

search of the rental car and had a reasonable expectation of privacy in the car,

which he did not intend to abandon.

On March 20, 2020, the district court issued an order to show cause directing

the state respondent (the "State") to electronically file a record of the state court

7

proceedings. The district court also instructed the State that it need not file an opposition to the petition unless directed to do so in a subsequent order. On April 17, 2020—the same day that the state record was filed—the district court issued a memorandum decision and order *sua sponte* dismissing Ethridge's habeas petition. Relying on *Stone*, the district court concluded that Ethridge could not obtain habeas relief on the ground that the state court erroneously denied his motion to suppress a gun seized during an allegedly unlawful search in violation of the Fourth Amendment. Although recognizing that *Stone*'s limitation on habeas relief was subject to exceptions, including where the state had provided no corrective procedures for Fourth Amendment violations, or where the petitioner had been precluded from utilizing the corrective procedures that existed, the district court found that neither of those exceptions applied to Ethridge's case. Specifically, the district court concluded that "there is no question of the adequacy of the state law remedy," and that Ethridge had a full and fair opportunity to litigate his claim in state court. App'x at 42. For these reasons, the district court dismissed Ethridge's

8

petition and declined to issue a certificate of appealability. On April 20, 2020, judgment was entered dismissing the case.

On May 26, 2020, Ethridge simultaneously filed a motion for reconsideration and a notice of appeal. In his motion for reconsideration, Ethridge argued that the district court's *sua sponte* dismissal denied him notice and the ability to argue that he did not have a full and fair opportunity to litigate his Fourth Amendment claim in state court. In particular, Ethridge contended that he did not have a full and fair opportunity to litigate his claim because the state court's determination that he had no standing to challenge the search was contrary to the Supreme Court's decision in *Byrd v. United States*, 138 S. Ct. 1518 (2018), which held that "the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy." *Id.* at 1531. Ethridge further asserted that a hearing was necessary for the district court to assess if external factors prevented the state court from considering his standing to contest the search. Additionally, Ethridge argued that the State had waived any defense under *Stone* by failing to raise it.

Without waiting for the State to respond, the district court denied the reconsideration motion, concluding that it had the authority to dismiss the petition

9

*sua sponte* under *Stone* and that it was "plain" that Ethridge could not overcome *Stone*. App'x at 70. The district court also reasoned that the State did not waive its defense under *Stone* because the State was not required to oppose the petition unless ordered to do so. *See* Rule 5(a) of the Rules Governing Section 2254 Cases in the U.S. District Courts.

Ethridge filed an amended notice of appeal, and we granted the certificate of appealability on the following issues: (1) whether a court needs to provide notice and an opportunity to be heard when *sua sponte* applying *Stone* to dismiss a 28 U.S.C. § 2254 habeas petition; and (2) if notice and an opportunity to be heard are required, whether the district court's dismissal order and Ethridge's reconsideration motion provided adequate notice and an opportunity to be heard in this case.

## DISCUSSION

As a threshold matter, separate from the notice issue, we note (as Ethridge concedes), that the district court was not required to wait until the State filed a motion to dismiss based upon *Stone*, but rather, had the discretion to raise that issue *sua sponte*. We have recognized "the authority of courts to raise *sua sponte* affirmative defenses where the defense implicates values beyond the interests of

10

the parties." *Acosta v. Artuz*, 221 F.3d 117, 121–22 (2d Cir. 2000) (holding that a district court may raise *sua sponte* a habeas petitioner's failure to comply with the statute of limitations); *see Femia v. United States*, 47 F.3d 519, 523 (2d Cir. 1995) (holding that a district court may raise *sua sponte* the affirmative defense of abuse of the writ); *see also Day v. McDonough*, 547 U.S. 198, 209 (2006) ("[W]e hold that district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition."). In *Stone*, the Supreme Court held that a petitioner may not obtain habeas relief under the Fourth Amendment on the ground that the state court declined to suppress evidence obtained in an unlawful search if he had a full and fair opportunity to litigate the claim in state court. *See* 428 U.S. at 494. This limitation on habeas relief, though not jurisdictional, necessarily implicates values beyond the interests of the parties, as it rests on prudential concerns counseling against the application of the Fourth Amendment exclusionary rule on collateral review, including considerations of judicial efficiency, comity, federalism, and the necessity of finality in criminal trials. *See Withrow v. Williams*, 507 U.S. 680, 686 (1993); *Stone*, 428 U.S. at 491 n.31. For these reasons, courts have the authority to raise *Stone sua sponte*, but are not required to do so. *See Davis v. Blackburn*, 803 F.2d 1371, 1373 (5th Cir. 1986) (per curiam)

(holding that, in appropriate cases, "a federal court is not foreclosed from *sua sponte* applying the principle of *Stone*"); *see also Tart v. Massachusetts*, 949 F.2d 490, 497 n.6 (1st Cir. 1991) (noting "the discretionary authority of federal appellate courts to raise the *Stone* prohibition *sua sponte*"); *Wallace v. Duckworth*, 778 F.2d 1215, 1219 n.1 (7th Cir. 1985) ("[S]ince the rule of *Stone v. Powell* is not a jurisdictional rule, we need not raise the issue *sua sponte*." (citation omitted)).[2]

A district court's power to raise a defense *sua sponte* is distinct, however, from the question of whether it has authority to dismiss a petition without affording the petitioner notice and an opportunity to be heard prior to dismissal. *See Acosta*, 221 F.3d at 124 (holding that, although a district court had the authority to raise the untimeliness of a habeas petition *sua sponte*, the district court erred in dismissing the petition without giving the petitioner notice and an opportunity to be heard); *Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999) ("The problem with the court's dismissal was not that it was done on the court's own motion, but rather

---

[2] Indeed, the Ninth Circuit has held that not only does a court have the authority to raise the *Stone* issue *sua sponte*, but it *must* raise it where the state failed to do so. *See Woolery v. Arave*, 8 F.3d 1325, 1327 (9th Cir. 1993) ("While this [*Stone*] requirement may be prudential rather than jurisdictional, it is founded in policy considerations that oblige the court to raise the issue *sua sponte* if the state neglects to assert it.").

that it was done without affording [the petitioner] notice and opportunity to be heard.").

We thus turn to the notice issue, which we review *de novo*. *See Murray v. Noeth*, 32 F.4th 154, 157 (2d Cir. 2022). As set forth below, we hold that a district court, prior to dismissing a habeas petition *sua sponte* under *Stone*, is required to provide a petitioner with notice and an opportunity to be heard. Here, the district court failed to comply with that procedure, and Ethridge's subsequent discussion of the *Stone* issue in his motion for reconsideration, which the district court then denied, did not provide him with the requisite notice and an opportunity to be heard.

## I. A Dismissal Under *Stone* Must Be Preceded by Notice and an Opportunity to Be Heard

Although *sua sponte* dismissals are warranted in certain circumstances, the general rule is that a district court has no authority to dismiss an action *sua sponte* without first providing a plaintiff with notice and an opportunity to be heard. *See Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988). In fact, we have emphasized that "dismissing a case without an opportunity to be heard is, at a minimum, bad practice in numerous contexts and is reversible error in others." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018) (collecting cases).

13

In habeas proceedings, a district court's authority to dismiss a petition *sua sponte* without affording the petitioner prior notice and an opportunity to be heard depends on the grounds for the dismissal. *See Acosta*, 221 F.3d at 124. Although in some circumstances, a district court may dismiss a petition "on the merits" without affording the petitioner prior notice, a district court must provide notice and an opportunity to be heard before dismissing a petition "on procedural grounds." *Id.*

In particular, a district court has the power to dismiss the petition on the merits without prior notice "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts ("Rule 4"). Therefore, such dismissals under Rule 4 are "appropriate only in those cases where the pleadings indicate that petitioner can prove no set of facts to support a claim entitling him to relief." *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983); *see also Cephas v. Nash*, 328 F.3d 98, 103 (2d Cir. 2003) (recognizing "the power to dismiss a habeas petition [without notice] when it is patently apparent that the court lacks jurisdiction to grant the relief demanded").

However, a district court generally must provide the petitioner notice and an opportunity to be heard before dismissing the petition on procedural grounds, such as untimeliness, *see Acosta*, 221 F.3d at 124–25, or abuse of the writ based upon a failure to show cause for not raising the claim in a prior petition, *see Lugo v. Keane*, 15 F.3d 29, 31 (2d Cir. 1994); *Femia*, 47 F.3d at 524. We explained that such dismissals require prior notice and an opportunity to be heard because they are adjudicated based on factors that are "usually outside of the record" and will not come to light unless properly asserted by the petitioner. *See Acosta*, 221 F.3d at 125 (citing *Femia*, 47 F.3d at 524).

For example, in *Acosta*, we held that a district court erred in dismissing a habeas petition as untimely under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1), without affording the petitioner prior notice and an opportunity to be heard, because the determination of timeliness did not implicate the merits and instead depended on the existence of special circumstances that could have prevented the petitioner from raising his claim. *See Acosta*, 221 F.3d at 125 (citing Section 2244(d)(1)). These circumstances included "existence of an unconstitutional impediment to filing a claim," a "situation where the constitutional right was recognized and made retroactive on collateral review

15

after the date the conviction became final," and "a situation where the factual basis for the claim first became discoverable through the exercise of due diligence after the date the conviction became final." *Id.* We reasoned that, because such circumstances usually were not reflected in the record and would not be "fully addressed in the petition of an unlearned and unskilled *pro se* petitioner," the district court was required to provide the petitioner advance notice, "unless it [was] unmistakably clear from the facts alleged in the petition" that it was "untimely." *Id.*

Similarly, in *Lugo*, we held that "a district court may not properly dismiss a habeas petition on the ground of abuse of the writ without providing the petitioner with notice of the proposed dismissal and an opportunity to be heard in opposition." 15 F.3d at 31. In reaching this decision, we emphasized that "[n]o principle is more fundamental to our system of judicial administration than that a person is entitled to notice before adverse judicial action is taken against him." *Id.* at 30.

In *Femia*, we held that "the rule set forth in *Lugo* applies with equal force when the petition is brought under [28 U.S.C.] § 2255." 47 F.3d at 522 ("We see no reason why a petitioner should have any less opportunity under § 2255 than under

§ 2254 to explain why his second or successive petition is not an abuse."). However, we then considered "whether, notwithstanding the general rule, there are certain instances in which a petition may be dismissed for abuse of the writ without prior notice to petitioner," *id.*, and held that there were indeed such "limited instances," *id*. at 523. More specifically, we concluded that a successive petition under Section 2255 can be dismissed *sua sponte* for abuse of the writ without prior notice to the petitioner where the ground for dismissal is *a lack of actual prejudice*, but that a district court must provide notice before dismissing a successive petition based on *a failure to show cause* for not raising the claim in the first petition. *Id.* at 524. We reasoned that "a finding of actual prejudice is one made on the merits based on the record" and, thus, "notice serves little purpose when only prejudice is at issue." *Id*. However, "[c]ause is quite a different matter." *Id*. In contrast to a finding of prejudice, the factors relevant to the determination of cause included "official interference or the reasonable unavailability to counsel of a factual or legal basis for a claim"—in other words, factors that would "only come to light if properly asserted by the petitioner." *Id.* We thus emphasized that, because the determination of cause, unlike a finding on the merits such as prejudice, depended on the existence of circumstances that were "usually outside

17

the record," the petitioner, "who may be unlearned in law and unskilled in pleading," must be given notice and an opportunity to explain why he failed to raise the claim in the first petition. *Id.*

Ethridge contends that, because a dismissal under *Stone* does not adjudicate the merits of the underlying constitutional claim, such dismissal is not appropriate under Rule 4 and must be preceded by notice and an opportunity to be heard. More specifically, relying on our reasoning in *Acosta*, *Lugo*, and *Femia*, Ethridge contends that, because *Stone*'s limitation on habeas review of Fourth Amendment claims allows for exceptions that depend on the existence of circumstances that are often outside of the record, a *pro se* petitioner must be given notice and an opportunity to present the circumstances that may support an exception to *Stone*.

We agree. *Stone* imposes a prudential limitation on a petitioner's ability to obtain habeas relief on the ground that the state court declined to suppress evidence obtained in an unlawful search. *See Withrow*, 507 U.S. at 686 (citing *Stone*, 428 U.S. at 494–95, 494 n.37). As such, *Stone* applies irrespective of the merits of the underlying Fourth Amendment claim. In adopting this limitation, the Supreme Court explained that the exclusionary rule, which bars admission of unlawfully discovered evidence, is not "a personal constitutional right," but "a

18

judicially created remedy" that applies only where its remedial objectives are best served. *Stone*, 428 U.S. at 486–87 (internal citations omitted). The Court concluded that the exclusionary rule generally should not apply on habeas review because, in this context, its contribution "to the effectuation of the Fourth Amendment is minimal" compared to "the substantial societal costs" of applying the rule. *See id.* at 494–95. The Court noted that considerations of comity and federalism, limited judicial resources, and the necessity of finality in criminal trials, weighed against applying the exclusionary rule on habeas review. *See id.* at 491 n.31.

However, *Stone*'s limitation on habeas review of Fourth Amendment claims is not absolute: a petitioner may obtain habeas relief if he shows that the state denied him an opportunity for full and fair litigation of his Fourth Amendment claim. *See Stone*, 428 U.S. at 494 n.37; *Gates v. Henderson*, 568 F.2d 830, 847–48 (2d Cir. 1977) (en banc). To do so, a petitioner must establish either that "the state has provided no corrective procedures at all to redress the alleged fourth amendment violations," or, "if the state has provided a corrective mechanism," that the petitioner "was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

Thus, whether a habeas petition will be dismissed under *Stone* does not depend on the merits of the underlying Fourth Amendment claim, but on whether the petitioner had a full and fair opportunity to litigate the claim in state court. In other words, a determination that *Stone* precludes a petitioner from obtaining habeas relief on his Fourth Amendment claim is not an adjudication on the merits of that claim, but, rather, an application of a prudential rule akin to a procedural bar. *See Withrow*, 507 U.S. at 686 (describing *Stone*'s limitation as prudential); *United States v. Ishmael*, 343 F.3d 741, 743 (5th Cir. 2003) (describing *Stone* as a "procedural bar[]"). Furthermore, a dismissal under *Stone* implicates concerns similar to those that guided our decisions in *Acosta* and *Femia* because the determination of whether the petitioner was precluded from fully and fairly litigating his claim in state court may depend on facts that are not apparent from the record.

The State argues that, because we consider a dismissal under *Stone* to be "on the merits" for the purposes of AEDPA's gatekeeping provisions governing the filing of successive petitions, such a dismissal also must be deemed "on the merits" under Rule 4 and thereby can be done without notice. *See Graham v. Costello*, 299 F.3d 129, 132, 134 (2d Cir. 2002). We find this argument unpersuasive because it

20

fails to recognize that the definition of an "on the merits" determination in the context of a court's performance of its AEDPA gatekeeping function is quite different from the general meaning of that term.

In *Graham*, we held that, because a dismissal under *Stone* was "on the merits" for the purposes of AEDPA's gatekeeping provisions, such dismissal would render any subsequent petition challenging the same conviction "successive" and require a petitioner to seek pre-filing authorization from the court of appeals. *See id.* at 134; 28 U.S.C. § 2244(b)(3)(A). *Graham*'s holding is not dispositive, however, on whether a dismissal under *Stone* must be preceded by notice and an opportunity to be heard when reviewing a *first petition* because not every dismissal that is deemed "on the merits" for the purposes of the AEDPA's gatekeeping provisions can be granted *sua sponte* under Rule 4. Indeed, dismissals "on the merits" that trigger AEDPA's gatekeeping provisions include dismissals based on procedural grounds, such as failure to show cause and untimeliness. *See Graham*, 299 F.3d at 133; *Villanueva v. United States*, 346 F.3d 55, 61 (2d Cir. 2003). Dismissals based on such instances of "procedural default" are deemed "on the merits" in the context of successive petitions because they conclusively preclude habeas relief, "even though the underlying merits of those claims are not reviewed

21

by any federal court."[3]  *Graham*, 299 F.3d at 133.  Importantly, in holding that a dismissal under *Stone* was "on the merits," *Graham* concluded that such a dismissal had "the same effect as the denial of a petition presenting procedurally defaulted claims when there is no showing of cause and prejudice."  *Id.* at 134.

Although dismissals based on procedural grounds, such as untimeliness and failure to show cause for a successive petition, are deemed "on the merits" for the limited purposes of AEDPA's gatekeeping provisions, our decisions in *Acosta* and *Femia* make abundantly clear that such dismissals may not be granted *sua sponte* under Rule 4 and must be preceded by notice and an opportunity to be heard.  *See Acosta*, 221 F.3d at 124; *Femia*, 47 F.3d at 524.  In declining to extend the reach of Rule 4 to such dismissals, we emphasized that, because procedural default is determined based on factors that may not be reflected in the record, it is essential to afford a petitioner, who may be unskilled in pleading, prior notice and an opportunity to be heard.  *See Acosta*, 221 F.3d at 124; *Femia*, 47 F.3d at 524.

---

[3]  As we explained, in the context of successive filings, "our distinction between petitions that are denied 'on the merits' and those that are not *does not depend on whether the federal court actually determined the merits of the underlying claims* but rather on whether the prior denial of the petition conclusively determined that the claims presented could not establish a ground for federal habeas relief."  *Graham*, 299 F.3d at 133 (emphasis added).

By contrast, these concerns are less prevalent in the context of successive filings, where the petitioner has had an opportunity to be heard on his first petition, and courts must perform a gatekeeping function under the AEDPA. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) (discussing the "screening function" that courts must perform under the AEDPA); *cf. Villanueva*, 346 F.3d at 62 ("[C]ontrary to [the petitioner]'s arguments, the application of AEDPA's 'second or successive' requirements to his petition does not violate the Suspension Clause because he had some reasonable opportunity to have [his] claims heard on the merits." (internal quotation marks omitted)). Indeed, in *Graham*, the state raised *Stone* in its opposition to the petitioner's first petition, presumably providing him with notice and an opportunity to argue why *Stone* did not bar his claim. *See Graham*, 299 F.3d at 131. Thus, *Graham*'s holding does not change our analysis that a dismissal under *Stone* is not "on the merits" for the purposes of Rule 4 and must be preceded by notice and an opportunity to be heard.

We also find unavailing the State's argument that, because we have recognized that New York state courts provide an adequate corrective mechanism for redressing Fourth Amendment violations and Ethridge relied on that mechanism to litigate his claim at all levels of the state court system, *Stone*

23

categorically bars habeas review of his claim and any opportunity to be heard would thus be meaningless. *Cf. Acosta*, 221 F.3d at 125 (holding that a district court must provide notice and an opportunity to be heard prior to the dismissal on timeliness grounds unless "it is unmistakably clear from the facts alleged in the petition" and "all of the special circumstances" that the petition is untimely). To be sure, we have held that New York state courts provide facially adequate procedures to redress Fourth Amendment violations. *See, e.g., Capellan*, 975 F.2d at 70 n.1 ("[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate."). Therefore, we agree with the State that the first exception to the application of *Stone*—namely, the adequacy of a state's corrective mechanism to redress Fourth Amendment violations—does not generally depend on factual matters outside the record, and, thus, notice and an opportunity to be heard would be of limited or no value to a petitioner relying on that exception.

The same, however, cannot be said for the second exception to the application of the *Stone* rule—that is, whether a petitioner "was precluded from using that [state court] mechanism because of an unconscionable breakdown in the underlying process." *Id.* at 70. In other words, the fact that a state has a series

24

of procedural mechanisms within its legal framework to redress Fourth Amendment violations does not necessarily preclude a finding that there was an unconscionable breakdown in that process in a particular case. *See, e.g.*, *Branch v. McClellan*, 234 F.3d 1261, 2000 WL 1720934 (Table), at \*3 (2d Cir. 2000) (summary order) (remanding to the district court to consider whether the habeas petitioner was precluded from litigating his Fourth Amendment claim because of an unconscionable breakdown in the state corrective process).

Moreover, in the rare instance where such an unconscionable breakdown may have occurred, the critical facts regarding such a breakdown may be based on conduct that is outside the record, such as a conversation between the petitioner and the defense attorney about filing the motion, or even perhaps a state court's failure to properly docket a suppression motion that was submitted by a defendant. As in *Acosta*, the existence of these types of circumstances may "not be fully addressed in the petition of an unlearned and unskilled *pro se* petitioner" who files a petition on standard forms that "are not designed to elicit" facts relating to the applicability of *Stone*. *Acosta*, 221 F.3d at 125. In short, because *Stone*'s application may depend on the existence of circumstances that may be outside the record and not pled in the petition, it is "essential" to afford a petitioner

25

notice and an opportunity to be heard before any such dismissal under *Stone*. *Femia*, 47 F.3d at 524.

This conclusion is consistent with our precedent. In *Young v. Conway*, 698 F.3d 69 (2d Cir. 2012), we declined to consider the state's invocation of *Stone* for the first time on appeal, reasoning that "indulging that argument would require a remand to afford [the petitioner] the opportunity to argue either why *Stone* does not apply or why he did not have a full and fair opportunity to litigate his claim." *See id.* at 86. In that case, we noted that the petitioner's Fourth Amendment claim was far from "typical" and had "*everything* to do with the basic justice of his incarceration." *Id.* at 87 (citing *Stone*, 428 U.S. at 491 n.31 (internal quotation marks omitted)). Specifically, the evidence admitted in the state proceedings "lack[ed] the typical indicia of reliability that [would] ordinarily weigh against re-litigating a Fourth Amendment claim on collateral review." *Id*.

Although not every case will present factual questions as compelling as those in *Young*, a petitioner must still be given notice prior to dismissal and an opportunity to argue that his petition should not be barred under *Stone* because he did not receive a full and fair opportunity to litigate his Fourth Amendment claim in state court. *See, e.g., Herrera v. Lemaster*, 225 F.3d 1176, 1178 (10th Cir. 2000)

26

(*sua sponte* directing the parties to file supplemental briefs addressing whether the petition is barred by *Stone*); *Caver v. Alabama*, 537 F.2d 1333, 1336 (5th Cir. 1976) (holding that, "[d]ifficult as it may be" for a petitioner to establish that the state failed to provide him with an opportunity for full and fair litigation of his claim, "the petitioner should be given a chance to be heard upon the legal standard announced in *Stone v. Powell*"). Additionally, allowing a district court to dismiss a petition *sua sponte* under *Stone*, without prior notice or an opportunity to be heard, would not only deprive a petitioner of an opportunity to argue why *Stone* does not bar his claim, but would also preempt the state's ability to waive its defense under *Stone*. *See Young*, 698 F.3d at 85 (holding that a state may waive its defense under *Stone*).

In sum, we hold that a district court must afford a petitioner notice and an opportunity to be heard before dismissing his petition *sua sponte* under *Stone*.

## II. Ethridge's Reconsideration Motion Did Not Provide Adequate Notice and an Opportunity to Be Heard

Here, it is uncontroverted that the district court dismissed Ethridge's petition *sua sponte* without first providing notice of the potential dismissal of the petition under *Stone* and affording Ethridge an opportunity to argue why *Stone* did not bar his Fourth Amendment claim. The State nevertheless argues that Ethridge's

27

motion for reconsideration, which objected to the *sua sponte* dismissal under *Stone* and was subsequently denied by the district court, provided the requisite opportunity to be heard after receiving notice of the dismissal order. We disagree.

Where notice and an opportunity to be heard are required in connection with the *sua sponte* dismissal of an action, they must be provided *before* the dismissal. As we have explained:

> An opportunity to be heard prior to dismissing a case is not a mere formality and the reasons are straightforward: No principle is more fundamental to our system of judicial administration than that a person is entitled to notice before adverse judicial action is taken against him. This is because providing the adversely affected party with notice and an opportunity to be heard plays an important role in establishing the fairness and reliability of the court's decision and avoids the risk that the court may overlook valid answers to its perception of defects in the plaintiff's case. *Sua sponte* dismissals without notice and an opportunity to be heard deviate from the traditions of the adversarial system and tend to produce the very effect they seek to avoid—a waste of judicial resources—by leading to appeals and remands.

*Catzin*, 899 F.3d at 82 (internal quotation marks and citations omitted). For these reasons, in *Acosta*, we held that a district court must afford the petitioner notice of the proposed dismissal and an opportunity to respond "before dismissing" the habeas petition *sua sponte* on statute of limitation grounds. 221 F.3d at 121. Similarly, in *Lugo*, we held that a district court must provide the petitioner notice

28

and an opportunity to be heard "prior to the dismissal" of the habeas petition under Section 2254 on the ground of abuse of the writ. 15 F.3d at 31. Therefore, although the district court had the discretion to raise the *Stone* issue *sua sponte*, Ethridge was entitled to receive notice of the proposed dismissal and an opportunity to respond *before* the district court dismissed his petition. The failure of the district court to do so here requires remand.

In reaching this conclusion, we reject the State's contention that Ethridge's post-judgment motion for reconsideration gave him an adequate opportunity to be heard after receiving notice of the dismissal under *Stone*. A motion for reconsideration is not an opportunity for a petitioner to "relitigate an issue already decided" or present arguments that could have been made before the judgment was entered. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Instead, such a motion may be granted only in limited circumstances when the petitioner identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013); *see also United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) ("A motion for relief from judgment . . . is properly granted only upon a showing

29

of exceptional circumstances."). Moreover, unlike the underlying dismissal, the denial of a motion for reconsideration is reviewed on appeal only for an abuse of discretion. *See Gomez v. City of New York*, 805 F.3d 419, 423 (2d Cir. 2015). Therefore, because a motion for reconsideration provides a narrow basis for relief and precludes the petitioner from re-litigating issues already decided or raising arguments that could have been made prior to the entry of judgment, it is not an adequate opportunity for a petitioner to be heard on the *Stone* issue. *See Progressive Credit Union v. City of New York*, 889 F.3d 40, 52 (2d Cir. 2018) (stating that an opportunity to be heard must be given "at a meaningful time and in a meaningful manner" (internal quotation marks omitted)).

Although the State contends that the district court did not constrain itself to the narrow standard governing reconsideration motions and, instead, fully considered Ethridge's arguments, the circumstances surrounding Ethridge's reconsideration motion illustrate the inadequacies of this procedural posture for the purpose of providing a full and meaningful opportunity to be heard under this rule. As an initial matter, the district court did not explicitly state whether it was reviewing Ethridge's arguments *de novo* or under the narrower reconsideration standard. Moreover, the district court did not specifically address Ethridge's

argument that he did not have a full and fair opportunity to litigate his Fourth Amendment claim because the state court's determination that he lacked standing to challenge the search was contrary to the Supreme Court's decision in *Byrd*, which held that a driver of a rental car who is not listed on the rental agreement may have a reasonable expectation of privacy in the vehicle.[4]  138 S. Ct. at 1531. Instead, the district court reiterated that New York state provides adequate corrective procedures for Fourth Amendment violations and that Ethridge litigated his claim at the trial and the appellate levels.  In addition, even assuming *arguendo* that the district court considered and rejected all of these arguments *de novo*, it is always possible that a *pro se* litigant who is aware of the rules governing motions for reconsideration might feel constrained by those rules not to present all of his factual and/or legal grounds for overcoming the *Stone* bar to habeas review.  In short, the legal and practical limitations of the post-judgment procedural posture prevented Ethridge's reconsideration motion from "establishing the fairness and reliability of the court's decision and avoid[ing] the risk that the court may overlook valid answers to its perception of defects" in the

---

[4] We express no view on whether Ethridge's argument has any merit as a basis for finding an exception to *Stone*.  Our point is only that the district court cannot be said to have addressed all of Ethridge's arguments *de novo*, when it did not directly address this argument at all.

petition, *Catzin*, 899 F.3d at 82 (internal quotation marks omitted), which we have emphasized are critical goals of affording the affected party with notice and a full and fair opportunity to be heard prior to the dismissal of the action. Thus, we conclude that Ethridge's motion for reconsideration was not an adequate substitute for an opportunity to be heard prior to the dismissal of his petition under *Stone*.

Our conclusion is consistent with the views of other circuits that have considered the issue. *See, e.g.*, *Herbst v. Cook*, 260 F.3d 1039, 1044 (9th Cir. 2001) ("[A] motion for reconsideration is not an adequate substitute opportunity for a habeas petitioner to respond when a district court *sua sponte* dismisses the petition."); *Hill v. Braxton*, 277 F.3d 701, 707–08 (4th Cir. 2002) (holding that a motion for reconsideration does not provide a habeas petitioner an adequate opportunity to be heard); *Beatrice Foods Co. v. New Eng. Printing & Lithographing Co.*, 899 F.2d 1171, 1177 (Fed. Cir. 1990) ("[R]econsideration after a decision is rendered is not a substitute for a pre-decision hearing, when such hearing is otherwise required.").

Accordingly, because Ethridge did not receive the requisite notice and an opportunity to be heard prior to the dismissal of his habeas petition under *Stone*,

and his post-judgment motion for reconsideration was not an adequate substitute for that requirement, we must remand the case to allow Ethridge a full and fair opportunity to present his arguments as to why *Stone* does not bar his Fourth Amendment claim.

## CONCLUSION

For the reasons set forth above, we **VACATE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.